**Kathryn CONANT, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 99–3459.**

United States Court of Appeals, Federal Circuit.

July 10, 2001.

---

Barbara Kraft, Beins, Axelrod & Kraft, PC, of Washington, DC, argued for petitioner.

Brent M. McBurney, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David M. Cohen, Director; Kirk T. Manhardt, Assistant Director; and John Groat, Attorney. Of counsel was Richard P. Schroeder, Attorney.

Before PAULINE NEWMAN, RADER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Kathryn Conant appeals from a decision of the Merit Systems Protection Board ("Board") affirming a denial by the Office of Personnel Management ("OPM") of Ms. Conant's claim for disability retirement. *Conant v. Office of Pers. Mgmt.*, No. PH–831E–97–0369–B–1 (M.S.P.B. July 27, 1999). Because the Board erred by including in Ms. Conant's disability application the allegations and documents submitted by the Internal Revenue Service ("IRS") in violation of a settlement agreement, we vacate and remand.

## BACKGROUND

Kathryn Conant worked as a revenue officer for the IRS from 1979 through February 1996. Her job required her to travel at least two to three days a week to recover delinquent taxes from taxpayers, and to spend the remainder of each work week in her office. In February 1993, Ms. Conant began to experience symptoms of what was later diagnosed as Chronic Toxic Encephalopathy ("CTE"), a degenerative disease of the brain that she alleges was caused by environmental toxins at her workplace. These CTE symptoms included headaches, pains in her arms and legs, twitching, difficulty breathing and concentrating, blurry vision, dizziness, stumbling, stuttering, abdominal and chest pains, and numbness. On May 10, 1995, Ms. Conant was taken to the emergency room after she became unresponsive and her limbs began jerking. She subsequently and frequently experienced similar attacks, but none required hospitalization. Although Ms. Conant consulted several doctors, her exact medical condition was not diagnosed as CTE until 1996. In the meantime, Ms. Conant notified her supervisors of her condition and they suggested she spend more time outside of the office building, if doing so relieved her symptoms.

In September 1995, the IRS issued a Notice of Proposed Removal (the "Removal SF–50"), proposing to remove Ms. Conant on the basis of two incidents. First, on June 20, 1995, Ms. Conant had been scheduled to visit taxpayers for the entire workday; while on duty she stopped at a neurologist's office for ten to fifteen minutes to obtain a copy of certain medical test results. She failed to report and deduct time for this stop from her official time-sheet. Second, during August 1995, Ms. Conant felt ill frequently and would step outside of the building to get fresh air. Twice that month she was observed reading a book outside of the office building without permission from her supervisor.

After a year of negotiations over her proposed removal, Ms. Conant and the IRS reached a settlement agreement in November 1996. The relevant provisions of the agreement for the purposes of the present appeal are:

1. The Agency will rescind the SF–50 reflecting that the Grievant had been removed, and will issue a new SF–50 reflecting that the Grievant resigned for personal reasons.

3. The Grievant agrees that she will not seek or accept employment in the future with any office of any Department of the Treasury agency or bureau. She further agrees that she will never apply to become an enrolled agent.

. . . . .

4. The Grievant will withdraw with prejudice her grievance concerning the removal, and the union will withdraw with prejudice its invocation of arbitration concerning the removal of the Grievant.

. . . . .

11. The Agency will utilize its best efforts to effectuate the Grievant's application for disability retirement and life insurance.

In November 1996, after the settlement agreement was signed, Ms. Conant submitted the "Applicant Statement of Disability" forms required to process her disability application. In March 1997, the IRS submitted the "Supervisor's Statement" forms required from an applicant's agency in connection with disability retirement. However, Ms. Conant was not aware that the IRS's documentation included: (1) a declaration by her supervisor on the Supervisor's Statement asserting that Ms. Conant suffered from "no documented medical condition"; (2) an "Attachment" which alleged that Ms. Conant "falsified time sheets" and "violated the rules of conduct" of her agency, and referenced the June 20, 1995 stop at the neurologist's office and her breaks outside during August 1995; and (3) the original Removal SF 50 removing Ms. Conant for "failure to observe official duty hours."

In June 1997, OPM denied Ms. Conant's disability application. OPM determined that Ms. Conant had failed to establish: (a) that she had a disabling medical condition; that she was disabled for useful and efficient service; or (b) that a nexus existed between her putative medical condition and her "falsification of time and work reports." Ms. Conant appealed OPM's denial of her disability application to the Board. In October 1997, the Board affirmed OPM's decision, holding that Ms. Conant had not proven a nexus between her alleged medical condition and her misconduct. Ms. Conant petitioned for a rehearing which the Board granted, and after this rehearing the Board reaffirmed OPM's denial of her disability application. As before, the Board concluded that Ms. Conant had not proven that her medical condition "caused her to falsify her time and work record or to absent herself from the workplace." Ms. Conant petitioned for review, which was denied by the Board on July 27, 1999. Ms. Conant timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. 1295(a)(9) (1994).

## DISCUSSION

The Board's decision must be sustained unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § ·7703(c) (1994).

Ms. Conant contends that the Board erred by considering the IRS's allegations of misconduct in conjunction with her disability application. She argues that the Conant IRS Settlement Agreement resolved all disputes between the parties as to any alleged misconduct. Therefore by re-alleging this same misconduct on the forms it filed in connection with Ms. Co-

nant's disability application, the IRS breached the terms of the agreement and compromised Ms. Conant's ability to receive disability retirement. The government asserts that it did not breach the agreement, and that Ms. Conant did not raise the issue below, thereby waiving her right to appeal the breach of the settlement agreement by the IRS. Therefore, before analyzing the merits of Ms. Conant's claim, we must determine whether she preserved this issue for appeal.

It is well-settled law that appellants from an administrative agency decision may not raise claims for the first time on appeal. *Kachanis v. Dep't of Treasury*, 212 F.3d 1289, 1293 (Fed.Cir.2000); *Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed.Cir.1989). As explained by the United States Supreme Court, "objections to the proceedings of an administrative agency [must] be made while it has an opportunity for correction in order to raise issues reviewable by the courts." *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). This court's standard for assessing whether an issue was adequately raised before the administrative agency is that "the issue must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so." *Wallace*, 879 F.2d at 832. Therefore, Ms. Conant's claim is reviewable by this court only if she raised the issue before the Board with sufficient specificity and clarity to make the tribunal aware of the issue.

Ms. Conant has objected to the IRS's failure to adhere to the settlement agreement at every stage of her case. When OPM first denied her disability retirement in June 1997, Ms. Conant's appeal complained of the IRS's "failure to keep the agreement" to "effectuate" her disability application. Nevertheless, in October 1997, the Board affirmed OPM's denial of her disability retirement. Ms. Conant then petitioned the Board for review, arguing that the IRS's allegations of misconduct had already been resolved: "The appellant grieved the charge and the employing agency withdrew the charge." The Board granted Ms. Conant a rehearing on the basis that she had not waived her right to a hearing. After this hearing, Ms. Conant submitted a post-hearing statement where she reasserted her claim that the IRS had "agreed to facilitate Appellant's application for disability retirement" but had "reneged on this commitment [agreement]" when it stated she had no disability on its agency forms. The Board reaffirmed the denial of her application whereupon Ms. Conant petitioned for review, repeating her complaint that the IRS's allegations of misconduct violated the settlement agreement:

> By entering the agreement to support her application and then not doing so, and instead bringing up the allegations of misconduct, [the IRS] injected into Ms. Conant's disability application the question of whether her alleged misconduct leading to her proposed removal was justified, precisely the question it had agreed not to litigate.... By reneging on the settlement agreement, the agency never had to meet its burden of proving her alleged misconduct in an adverse action hearing.

After the Board issued its final decision denying her petition for review, Ms. Conant appealed to this court, again arguing that the IRS violated the terms of the settlement agreement by alleging misconduct on the forms it submitted as part of her disability application. Thus, Ms. Co-

nant has repeated her claim with more than adequate specificity and clarity for the Board to realize the issue was before it. Although the issue was clearly before the Board, it failed to consider this question. Given that Ms. Conant has preserved the issue, this court may review the merits of her claim that the IRS breached the settlement agreement by alleging misconduct in the documents it submitted regarding her disability application.

 A settlement agreement is a contract, and its construction is a question of law which this court reviews *de novo*. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed.Cir.1998); *Tretchick v. Dep't of Transp.*, 109 F.3d 749, 752 (Fed.Cir.1997). When interpreting a settlement agreement, we first ascertain whether the agreement clearly states the parties' understanding. *King v. Dep't of the Navy*, 130 F.3d 1031, 1033 (Fed.Cir. 1997). Any remaining ambiguities are resolved by implementing the parties' intent at the time the agreement was made.[1] *King*, 130 F.3d at 1033.

 As part of the Conant–IRS settlement agreement, the IRS expressly agreed to rescind its removal action against Ms. Conant and issue a new SF–50 stating she resigned voluntarily for personal reasons, and agreed to help her obtain disability retirement. In return, Ms. Conant agreed to drop her grievances and promised never to seek or accept employment with the agency.

The IRS has clearly breached its obligations under the agreement. In paragraph 1, the IRS stipulated that it would "rescind" the original Removal SF–50 and issue a new SF–50 stating that Ms. Conant resigned for personal reasons. By agreeing to "rescind" the Removal SF–50, the IRS promised in effect to destroy it, erasing "removal" and all reasons for such a removal from Ms. Conant's professional record with the agency. By agreeing to issue a new SF–50 in its place, the IRS promised that the only legal document recording the end of Ms. Conant's employment with the agency would henceforth be the SF–50 stating she resigned for personal reasons. Accordingly, by submitting the original Removal SF–50 with Ms. Conant's disability application, the IRS breached the agreement and prejudiced the disability proceedings.

Furthermore, the IRS breached its obligation to use its "best efforts" to "effectuate" Ms. Conant's disability retirement, as stipulated in paragraph 11. By promising to "effectuate" Ms. Conant's application, the IRS bound itself to help Ms. Conant receive the full extent of any disability retirement available to her under law. An agency's "best efforts" to "effectuate" an employee's application for benefits do not include sabotaging that application through unproven allegations of misconduct or by submitting forms that it had promised to rescind. At a minimum, an agency's "best efforts" must include adherence to any settlement agreement that it has signed. The agency in this instance did not use its best efforts to assist Ms. Conant in obtaining her disability retirement, but rather took affirmative steps to impede and to prejudice the process.

---

1. It is a generally accepted rule that an ambiguous contract is to be construed in accordance with the intent of the parties. *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed.Cir.1986), but if that intent cannot be determined, the rules stated in *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed.Cir.1992) would apply. Such is not the case here.

Although the IRS's breach of the settlement agreement compromised Ms. Conant's disability application, both OPM and the Board failed to recognize the questionable nature of the materials submitted by the IRS. The IRS's documentation of alleged misconduct had not been adjudicated by any competent authority. The IRS had not met any burden of proving these allegations, nor had Ms. Conant been afforded the opportunity to defend herself against them. Hence, it was abuse of discretion for the Board to include such unproven allegations in its evaluation of Ms. Conant's disability application.

■ Furthermore, neither OPM nor the Board construed the Conant–IRS settlement agreement as it applied to Ms. Conant's benefits, despite the fact that the text of the settlement agreement was before each tribunal in making its determinations. Where a settlement agreement between the parties is relevant to an administrative proceeding, directly addresses an issue in dispute, and is not contrary to law, an administrative agency cannot choose to ignore the agreement. In the present case, the settlement agreement resolved the dispute surrounding Ms. Conant's proposed removal. Therefore, it was abuse of discretion for the Board not to construe the agreement as it applied to Ms. Conant's disability application.

## CONCLUSION

The IRS breached the settlement agreement by submitting documents it had agreed to rescind, and by using its "best efforts" to undermine rather than "effectuate" Ms. Conant's disability application when it reiterated those allegations of misconduct resolved by the agreement. This breach of the settlement agreement was not immaterial because, on the basis of the IRS's allegations, both OPM and the Board expected Ms. Conant to prove a nexus between her disability and the alleged misconduct. Because these documents and allegations materially compromised Ms. Conant's eligibility for disability retirement, we vacate the Board's decision and remand for redetermination of Ms. Conant's disability application. At the rehearing, Ms. Conant is entitled to a redetermination of her disability retirement and the Board may not consider any allegations of misconduct or documents that were infected by the breach of the Conant–IRS settlement agreement.

*VACATED AND REMANDED.*

## COSTS

Costs to Petitioner.

RADER, Circuit Judge, dissents.

**Barbara J. WESTBERRY,
Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Respondent–
Appellee.**

**No. 00–7102.**

United States Court of Appeals,
Federal Circuit.

July 11, 2001.

Cindy B. Smith, Law Office of Cindy B. Smith, of Truckee, California, argued for claimant-appellant. Of counsel on the brief was Jeffrey Wood, of York, PA.

Joseph Trautwein, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. On the

brief were David M. Cohen, Director; James M. Kinsella, Deputy Director; and William K. Oliver, Attorney. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and Michael J. Timinski, Attorney, Department of Veterans Affairs, of Washington, DC.

Before PAULINE NEWMAN, MICHEL, and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

Barbara J. Westberry, the surviving spouse of deceased veteran Lamar Westberry, appeals the August 9, 1999 decision of a three-judge panel of the United States Court of Appeals for Veterans Claims ("the Veterans Court"), affirming the denial of an earlier effective date for the award and payment of death pension benefits. *Westberry v. West,* 12 Vet.App. 510 (1999) *("Westberry I ")*. Under 38 C.F.R. § 3.150(b), the Department of Veterans Affairs ("VA") must send an application to "any dependent who has apparent entitlement" to obtain death benefits. 38 C.F.R. § 3.150(b) (1994). Under the statute, a surviving spouse who was separated from the veteran is barred from entitlement to benefits unless he or she proves that the separation was caused by the veteran, and the spouse was without fault. 38 U.S.C. § 1541(a) (1994); 38 U.S.C. § 101(3) (1994). Because the VA has a duty to provide an application for benefits only when there is an "apparent entitlement," *i.e.,* where entitlement is evident and not merely a "possibility," it was under no duty to provide Mrs. Westberry with an application. The fact that she was separated from the veteran and the lack of any information in the VA file that the separation was solely the fault of the veteran made it "apparent" that she was not entitled to benefits. Therefore, we affirm the decision of the Veterans Court.

**Background**

Lamar Westberry served on active duty from February 1951 to January 1954 and from October 1954 to December 1955. At the time of his death on February 7, 1987, Mr. Westberry had been receiving a 100 percent non-service-connected VA pension for both himself and his wife. Documents in Mr. Westberry's claims file at the time of death indicated that the Westberrys had been continuously married since 1981, but had recently separated and were living apart. There was no information in Mr. Westberry's VA file indicating why the couple separated.

On February 9, 1987, Mrs. Westberry called the Department of Veterans Affairs Regional Office ("VARO") to report her husband's death and to inquire into applying for death benefits. She provided her name, social security number, the veteran's name, the date of death, and her address. The VA erroneously told Mrs. Westberry that she was ineligible for death benefits because she did not have any minor children living at home. Consequently, Mrs. Westberry did not file a claim for benefits at that time, nor did the VA send Mrs. Westberry an application form.

On February 18, 1987, the VA sent a letter addressed to Mr. Westberry at Mrs. Westberry's address. The letter asked Mr. Westberry to supply the exact date of separation from his wife. The letter advised Mr. Westberry that failure to provide such information would result in the removal of his wife from his pension benefit at an earlier date and could result in overpayment in his account.

Six years later, on February 12, 1993, Mrs. Westberry filed for VA death pension benefits after learning from a newspaper

article that she might be eligible. Death benefits are generally not awarded to the surviving spouse where a couple has separated. An exception exists where the separation "was due to the misconduct of, or procured by, the veteran without the fault of the [surviving] spouse." 38 U.S.C. § 101(3). To determine whether Mrs. Westberry satisfied the exception, in March 1993, the VA requested that Mrs. Westberry provide details as to the cause of the separation. In response, Mrs. Westberry submitted affidavits and police reports documenting incidents of domestic violence. After reviewing the evidence, the VA determined that the separation was not Mrs. Westberry's fault. On July 15, 1993, the VA notified Mrs. Westberry that her claim for a pension was approved with an effective date of March 1, 1993.

Mrs. Westberry appealed to the Board of Veterans' Appeals ("Board"), contending that the effective date should have been six years earlier, in 1987, when she first requested information regarding death benefits. In a July 25, 1996 decision, the Board denied her claim. In a January 11, 1999 single-judge decision, the Veterans Court affirmed the Board's decision.

On August 9, 1999, the Veterans Court granted Mrs. Westberry's motion for a panel decision, withdrew the January 11, 1999 single-judge decision, and issued a three-judge panel decision affirming the July 1996 Board decision. The Veterans Court held that Mrs. Westberry's telephone conversation with a VA counselor in February 1987 was not an informal claim under 38 C.F.R. § 3.155(a) (1994). *Westberry I*, 12 Vet.App. at 513. The Veterans Court also held that the VA had no duty

under section 3.150(b) to send an application for death benefits to Mrs. Westberry upon receipt of notice of her husband's death. *Id.*

On February 3, 2000, the Veterans Court denied Mrs. Westberry's request for en banc rehearing. Judge Steinberg wrote an opinion dissenting from the denial of en banc rehearing. *Westberry v. West*, 13 Vet.App. 305 (2000) (*"Westberry II"*).

On March 29, 2000, Mrs. Westberry filed a timely appeal to this court. Her only argument on appeal is that under section 3.150(b), the VA was required to send her an application for death benefits. The failure of the VA to send the application, Mrs. Westberry contends, warrants relief under the doctrine of equitable tolling.[1] We heard oral argument on February 9, 2001.

## Analysis

Under the Veterans' Judicial Review Act, Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), we may review "the validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a) (1994). Our review is de novo.

■ The sole issue in this appeal is whether Mrs. Westberry was "apparently entitled" to receive benefits, thus triggering the Secretary's duty under section 3.150(b) to provide her with an application for benefits. Death pension benefits are available to the "surviving spouse" of a veteran who meets the service require-

1. Neither party briefed or argued whether Mrs. Westberry's claim would be eligible for equitable tolling, assuming the VA was re-

quired to send her an application under 38 C.F.R. § 3.150(b). Thus, we decline to decide that issue today.

ments of 38 U.S.C. § 1521(j) (1994), or who at the time of death was receiving or was entitled to receive compensation or retirement pay for a service-connected disability. 38 C.F.R. § 1541(a). A "surviving spouse" is defined as "a person of the opposite sex who was the spouse of the veteran at the time of the veteran's death, *and* who lived with the veteran continuously from the date of marriage to the date of the veteran's death ... and who has not remarried or ... lived with another person and held himself or herself out openly to the public to be the spouse of such other person." 38 U.S.C. § 101(3) (emphasis added); 38 C.F.R. § 3.50(b) (defining "surviving spouse"). Generally, marital separation precludes the spouse of a veteran from eligibility for death benefits. An exception exists, however, if the separation "was due to the misconduct of, or procured by, the veteran without the fault of the spouse." 38 U.S.C. § 101(3); 38 C.F.R. § 3.50(b) (providing exception in cases of separation).

Under section 3.150(b), the VA must send an application to any "dependent" with "apparent entitlement" to benefits. Section 3.150(b) provides, in pertinent part:

> Upon receipt of notice of death of a veteran, the appropriate application form will be forwarded for execution by or on behalf of any dependent who has *apparent entitlement* to pension, compensation, or dependency and indemnity compensation. If it is not indicated that any person would be entitled to such benefits, but there is payable an accrued benefit not paid during the veteran's

lifetime, the appropriate application form will be forwarded to the preferred dependent.

*Id.* (emphasis added). The Secretary has defined a "dependent" as a veteran's "spouse or child." 38 C.F.R. § 3.23(d)(1) (1994). In defining "dependent," section 3.23(d)(1) further specifies that "[a] veteran's spouse who resides apart from the veteran and is estranged from the veteran may not be considered the veteran's dependent unless the spouse receives reasonable support contributions from the veteran." *Id.* The phrase "apparent entitlement" is not defined in the statute, in the regulations, or in any interpretive document cited for us.

■■■ The parties disagree as to the meaning of the term "apparent entitlement." Mrs. Westberry argues that it should be construed broadly so as to require the VA to send an application to anyone who is "potentially" entitled to receive benefits. Thus, she argues that because a spouse separated from the veteran at the time of death could be entitled to death benefits—by proving that the separation was solely the fault of the veteran—under section 3.150(b), the VA must send an application.[2]

In applying the regulation, however, the Secretary has construed the phrase "apparent entitlement" more narrowly. Under the Secretary's construction, the VA need only look to whether the veteran and the spouse lived together continuously until the veteran's death. Alternatively, if the couple was separated, the VA need only determine whether VA records con-

---

**2.** To support her argument, Mrs. Westberry relies in part on the Veterans Adjudication Procedure Manual, M21–1. Because it appears from the Veterans Court opinion that Mrs. Westberry did not raise the issue before

the Veterans Court, we decline to address it here in the first instance. *Westberry I*, 12 Vet.App. at 514 (noting that the manual "has not been made an issue here").

tain any evidence that the separation was solely the fault of the veteran; if so, the VA has the duty to send an application.

■ We give substantial deference to the agency's interpretation of its own regulation unless "it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (noting that the agency's interpretation must be given "controlling effect unless it is plainly erroneous or inconsistent with the regulation"); *see also Southern California Edison Co. v. United States,* 226 F.3d 1349, 1356–57 (Fed.Cir.2000) (referencing *Thomas Jefferson,* 512 U.S. at 512, 114 S.Ct. 2381) (noting that an agency's interpretation "must be given effect 'so long as the interpretation sensibly conforms to the purpose and wording of the regulations'") (internal citation omitted). In this case, we find that the Secretary's construction or application of the regulation is not plainly erroneous or inconsistent with the language of the regulation.

The dictionary definition of the term "apparent" supports the Secretary's construction. "Apparent" is defined as "capable of being easily perceived," "obvious," "discernible," or "evident ." Random House Webster's Unabridged Dictionary 100 (2d ed.2000). In contrast, "potential" is defined as "possible, as opposed to actual," or "capable of becoming." *Id.* at 1035. Under the regulation, it is the "apparent" entitlement to benefits, and not merely "potential" or "possible" entitlement that triggers the VA's obligation to send an application. Entitlement is only "apparent" when it is discernible from the file that the claimant meets the basic eligibility requirements. It is undisputed that according to the information in the VA file, Mrs. Westberry did not satisfy the basic eligibility requirements; at the time of Mr. Westberry's death, the couple was separated and living apart. The only exception to the general rule precluding eligibility for a separated spouse is where the file indicates that the separation was solely the fault of the veteran. It is undisputed that at the time of Mr. Westberry's death, *the VA did not have any information* indicating that this exception applied. Indeed, the information in Mr. Westberry's file at the time of his death indicated only that Mrs. Westberry would *not* be entitled to benefits. Thus, at the time of death, it was impossible for the VA to discern from the file that Mrs. Westberry was entitled to benefits.

Certainly, in some cases, the spouse may later be able to show that the separation was solely the veteran's fault, and therefore, the spouse would be entitled to benefits. By providing an application without request only to those "apparently entitled" to receive benefits, however, the VA does not prevent eligible claimants from obtaining benefits, nor does it affect any subsequent adjudication. Moreover, the fact that under the regulation, some eligible claimants will not receive the application does not lead to the conclusion that the VA has an obligation to send applications to *all* separated spouses. Indeed, section 3.150(b)'s governing statute, 38 U.S.C. § 5102 (1994), only requires the VA to send applications when requested. In implementing section 3.150(b), the Secretary imposed upon himself a greater obligation than required by statute. It would not be proper for us to impose an even greater burden upon the Secretary, as Mrs. Westberry argues.

### Conclusion

We hold that the Secretary's construction of section 3.150(b) is controlling, be-

cause it is in accordance with the language of the regulation. Therefore, we affirm the decision of the Veterans Court.

*AFFIRMED.*

NEWMAN, Circuit Judge, dissenting.

It is not disputed that Mrs. Westberry was eligible to receive surviving spouse benefits from the veteran's death in 1987. 38 U.S.C. § 1541(a). It is not disputed that when she made a timely inquiry in 1987 she was given misinformation by a VA official, who told her that she was not eligible for survivor's benefits because there were no minor children. In reliance thereon she did not file an application for such benefits until several years later, when she learned that she had been misinformed.

The regulations require the VA to send a survivor's benefits form to the surviving spouse. 38 C.F.R. § 3.150(b). It is not disputed that the VA failed to do so. Even on the VA's theory that its error was justifiable, it has no right to rely on its error in order to deprive Mrs. Westberry of the survivor's benefits to which she has always been entitled. Indeed, the VA does not dispute entitlement; it argues only that because she did not submit a formal claim in 1987, due to the VA's incorrect advice, she can not recover the benefits that she was entitled to receive from that date.

The ill-conceived reliance by the VA on the "apparent entitlement" clause of its regulation in order to justify its admitted errors is hard to reconcile with the VA's obligation to serve veterans and their dependents that underlies the regulation.

*See, e.g., Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). The VA not only gave incorrect information by telephone, but did not follow its own procedure for sending written notice to dependents. Whether the Secretary's regulations exceed the statute's requirements (benefitting the veteran's dependents), as the majority contends, does not assuage the serious concern that is here raised. It is bad enough that dependents such as Mrs. Westberry do not receive correct information when they inquire; but the Secretary's refusal to remedy its admitted errors is unconscionable.