NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3283

DARYL F. DAVIS,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

Daryl F. Davis, of Pontiac, Michigan, pro se.

Kent C. Kiffner, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director; and Martin F. Hockey, Jr., Assistant Director.

Appealed from:  Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3283

DARYL F. DAVIS,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

Petition for review of the Merit Systems Protection Board in CH0731960040-C-1.

_____

DECIDED:    January 9, 2009

_____

Before RADER, SCHALL, and DYK, <u>Circuit Judges</u>.

PER CURIAM.

Daryl F. Davis ("Davis") petitions for review of a final order of the Merit Systems Protection Board ("Board") denying Davis's petition for enforcement of a 1996 settlement agreement between Davis and the Department of the Treasury's Internal Revenue Service ("IRS"). <u>Davis v. Dept. of Treasury</u>, No. CH-0731-96-0040-C-1 (M.S.P.B. May 5, 2008). We <u>affirm</u>.

## BACKGROUND

On July 21, 1994, Davis was tentatively selected for a Criminal Investigator (Special Agent) position within the IRS, contingent upon successful completion of a drug test and a background investigation. According to a 1995 affidavit by the chief of the IRS Criminal Investigation Division, several issues identified during Davis's background

investigation raised concerns, including financial delinquencies and alleged misstatements on Davis's federal employment applications concerning college degrees. As a result, Davis's selection for the Special Agent position was withdrawn. Davis appealed his non-selection to the Board on October 16, 1995, seeking "[t]o be appointed to the position," and also filed an EEOC complaint. On January 18, 1996, Davis and the IRS entered into a settlement agreement ("Agreement") covering both the Board and EEOC actions. In the Agreement, the IRS agreed to "cancel its negative suitability determination and select Mr. Davis for the position of Criminal Investigator (Special Agent) GS-1811, Grade 7." The agreement contained specific provisions stating that Davis would be given his highest previous rate of pay, that he would not be reimbursed for relocation expenses, that he waived all claims to attorney fees, and that he was required to satisfy all outstanding debts and judgments against him within six months. In addition, the Agreement noted that Davis would be required to "satisfactorily complete all required training and satisfy all terms and conditions of employment as a Special Agent" and that the agreement "contain[ed] all terms and conditions of the settlement. No other terms or conditions shall be binding unless placed in writing and signed by all of the parties." The Agreement contained no confidentiality provision and no provision expressly addressing Davis's alleged misstatements on employment applications. After the Agreement was entered into the Board's record for enforcement purposes, Davis was appointed as (and apparently remains) an IRS Special Agent.

The administrative record indicates that at some point in 2003, the U.S. Attorney's Office for the Eastern District of Michigan requested that the IRS conduct a Giglio review for four Special Agents, including Davis, who were potential witnesses in a

criminal investigation that appeared to be headed for trial ("the criminal tax case").[1]

Relying in part on Davis's alleged misstatements in his employment applications, the IRS concluded that Davis had potential Giglio problems and so informed the prosecutors. On December 4, 2003, Davis was informed by the IRS that his active cases, other than those already at the U.S. Attorney's Office for prosecution, would be transferred to another agent and that he would be reassigned to the intelligence section. After obtaining the necessary security clearance, Davis began work in that section.

Davis was ultimately not used as a witness in the criminal tax case, but discussions between the IRS and the U.S. Attorney's Office concerning Davis continued for several years. Although the IRS apparently concluded that Davis had potential Giglio problems, the U.S. Attorney's Office declined to make an advance determination that it could not use Davis as a witness because of a Giglio problem. The U.S. Attorney's Office informed the IRS that it made Giglio determinations on a case-by-case basis, and that it would not make a determination whether Davis was Giglio-impaired unless it became necessary to do so in connection with a case where his testimony was actually contemplated.

On March 21, 2007, Davis filed a petition with the Board seeking enforcement of the 1996 Agreement, contending that the IRS "breached the settlement agreement and intentionally misrepresented [Davis's] professional record" when on June 4, 2003, and on numerous subsequent occasions the IRS communicated to the United States

---

[1]    Giglio v. United States, 405 U.S. 153-54, 154 (1972), recognized the constitutional obligation of a prosecutor to disclose to the defendant evidence that affects the credibility of a government witness. See Kahn v. Dep't of Justice, 528 F.3d 1336, 1340 n.4 (Fed. Cir. 2008).

Attorney's Office, in responding to a Giglio review, that Davis had falsified his federal employment application forms. For relief, Davis requested that the Board order the agency "to remove and expunge all documentation . . . that makes reference to [Davis] falsifying [his] pre-employment application forms."

An Administrative Judge ("AJ") issued an initial decision on December 17, 2007. The AJ found that Davis was appointed as a Special Agent pursuant to the Agreement and that in the intervening years he had been promoted from GS-7 to GS-13. The AJ determined that the 1996 Agreement "contains no confidentiality clause" and that "no provision in the parties' agreement . . . precludes the agency from transmitting information underlying the 1995 suitability determination and Board appeal, including the parties' settlement agreement, to the local United States Attorney to assist him or her in determining the scope, if any, of the appellant's potential 'Giglio impairment.'" Finally, the AJ noted that the Agency had not actually proposed or taken an adverse personnel action against Davis based on the information underlying its 1995 suitability determination, but that if it did so in the future, Davis would be able to appeal that action. Accordingly, the AJ denied Davis's petition for enforcement.

On May 5, 2008, Davis's petition for review by the full Board was denied and the AJ's initial decision became the final decision of the Board. Davis timely petitioned this court for review, and we have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our review of Board decisions is limited. We must affirm the decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or

regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see also Lary v. U.S. Postal Serv., 472 F.3d 1363, 1366-67 (Fed. Cir. 2006).

On appeal, Davis argues that the IRS breached the 1996 Agreement by "misrepresent[ing] the settlement agreement and [Davis's] professional history with the agency" by disclosing to the U.S. Attorney's Office "that [Davis] falsified his pre-employment application forms when his suitability for employment as a special agent was being considered in 1995." We agree with the Board, however, that the Agreement, which states that it contains "all terms and conditions of the settlement," contains no confidentiality provision that would prohibit the disclosure of issues surrounding Davis's employment applications or settlement to the U.S. Attorney's Office. In addition, we would be reluctant to construe a confidentiality provision to limit the ability of an agency to disclose to the U.S. Attorney's Office information necessary to allow the prosecutors to fulfill their obligations under Giglio. Such an interpretation would likely render the settlement provision unenforceable as contrary to public policy. See Fomby-Denson v. Dep't of Army, 247 F.3d 1366, 1375-78 (Fed. Cir. 2001).

Davis also argues that the Agreement should be interpreted to resolve the falsification dispute in his favor, stating "[t]he parties['] understanding of the settlement agreement was that no falsification took place in the current or prior year background investigations which would preclude the appellant from being found suitable for employment and performing the full and essential duties and responsibilities of a law enforcement officer." No provision of the Agreement states that in agreeing to rescind its negative suitability determination, the IRS was additionally agreeing that the alleged falsifications had not occurred.

Davis additionally contends that the facts of this case are similar to <u>Conant v. Office of Personnel Management</u>, 255 F.3d 1371 (Fed. Cir. 2001), in which the court held that the IRS breached a settlement agreement when it later disclosed to another agency (the Office of Personnel Management) that the petitioner had not voluntarily resigned. Unlike the settlement in this case, however, the settlement agreement in <u>Conant</u> specifically required the IRS to rescind its original removal such that the legal record would reflect that Conant had resigned "for personal reasons." <u>Id.</u> at 1376. Moreover, disclosure of the original removal was inconsistent with a settlement agreement provision requiring the IRS to use "best efforts" to assist Conant in obtaining disability retirement benefits from the Office of Personnel Management. <u>Id.</u> The Agreement reached by Davis and the IRS contains no such provisions.

Finally, Davis contends that the original 1995 suitability determination was procedurally deficient. The settlement agreement Davis entered into, however, was by its own terms a "full and complete settlement" of his claims stemming from the 1995 events surrounding his initial non-selection as a Special Agent, and any alleged procedural irregularities that led to that negative suitability determination are no longer relevant. Having entered into an agreement representing a final settlement of issues stemming from the negative suitability determination in 1995, Davis may not now assert alleged procedural defects through this petition for enforcement.

Accordingly, we <u>affirm</u> the decision of the Board.

COSTS

No costs.