NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**JOSE ROSARIO-FABREGAS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

———————————

2022-2280

———————————

Petition for review of the Merit Systems Protection Board in Nos. NY-0752-10-0127-X-2, NY-0752-10-0127-X-3.

———————————

Decided: May 30, 2023

———————————

JOSE EVARISTO ROSARIO-FABREGAS, San Juan, PR, pro se.

BRITTNEY M. WELCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

———————————

Before LOURIE, CLEVENGER, and TARANTO, *Circuit Judges*.

CLEVENGER, *Circuit Judge*

Mr. Jose Rosario-Fabregas, acting pro se, timely appeals a final decision of the Merit Systems Protection Board ("Board" or "MSPB") dismissing his petitions for enforcement of two compliance initial decisions issued by the Board's administrative judge ("AJ"). *See Rosario-Fabregas v. Dep't of the Army*, Nos. NY-0752-10-0127-X-2, NY-0752-10-0127-X-3, 2022 WL 3073707 (M.S.P.B. Aug. 1, 2022) (hereinafter Final Decision). We have jurisdiction under 28 U.S.C. § 1295(a)(9). For the reasons set forth below, we vacate the Board's final decision and remand for specific further proceedings.

## BACKGROUND

Mr. Rosario-Fabregas was employed as a Biologist (Project Manager), GS-12 by the U.S. Army Corps of Engineers ("Agency") in the Regulatory Division, San Juan, Puerto Rico. The Agency removed Mr. Rosario-Fabregas from his position effective February 12, 2010. Final Decision at *1. He successfully challenged his removal at the Board, obtaining an Order dated November 30, 2011 directing the Agency to reinstate him to his former position within 20 days and to provide him within 60 days with the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management ("OPM")'s regulations. *Rosario-Fabregas v. Dep't of the Army*, No. NY-0752-10-0127-I-1, 2011 WL 12516590, at *3-4 (M.S.P.B. Nov. 30, 2011). The Board also ordered the Agency to provide the Defense Finance and Accounting Service ("DFAS") with all information necessary to accomplish the award of back pay, interest, and benefits. Satisfaction of the Board's Order would require DFAS to provide Mr. Rosario-Fabregas with back pay for the pay periods between his termination in early 2010 and his reinstatement in late 2011, and to coordinate with the Social Security Administration ("SSA") to enable SSA to correctly allocate Mr.

Rosario-Fabregas' back pay to secure the correct benefits under the Social Security and Medicare programs.

### FIRST PETITION FOR ENFORCEMENT

On January 30, 2012, Mr. Rosario-Fabregas filed a petition with the Board to enforce its November 30, 2011 Order, alleging that the Agency had not fully complied because, inter alia, it had used certain incorrect authority codes on the OPM Standard Form 50 ("SF-50") canceling his removal, and asking that the Agency be ordered to correct the alleged error. C-1 Compliance File, Tab 1 at 2-3, Attach. 3. His petition was assigned to an AJ of the Board. On February 22, 2012, the Agency responded that it had issued the SF-50 canceling Mr. Rosario-Fabregas' removal on December 2, 2011, and thereafter worked with DFAS to provide "the majority" of his owed back pay, interest, and benefits on January 26, 2012. The Agency response did not address the alleged error in the issued SF-50. C-1 Compliance File, Tab 6 at 1-2. On May 30, 2012, upon review of the Agency's submissions, the AJ found the Agency in compliance and that, inter alia, "the adjusted gross back pay was $173,139.59 and with interest of $6,148.65 . . . totaled $179,288.24." *Rosario-Fabregas v. Army*, No. NY-0752-10-0127-C-1, 2012 WL 2870054, slip op. at 3-4 (M.S.P.B. May 30, 2012). The AJ thus denied the petition, and her initial decision became final on July 4, 2012.

### SECOND PETITION FOR ENFORCEMENT

Mr. Rosario-Fabregas remained convinced that the Agency had not fully complied with the Board's November 30, 2011 Order, and thus filed a second enforcement petition on February 19, 2013. The second petition, coupled with supplementary filings, noted that the Agency's submissions in the first enforcement action contained multiple inconsistent values for the amount of back pay owed and actually paid: the amount stated by the AJ in the decision denying the first petition for enforcement ($179,288.24) and five other amounts ($168,515.12, $154,738.32,

$158,219.12, $158,905.52, and $175,815.35).  Mr. Rosario-Fabregas asked the Board to order clarification of these discrepancies and payment of any difference owed.  C-2 Compliance File, Tab 3, Attach. at 2.  He also cited an April 26, 2013 earnings statement that he had received from SSA to allege that the Agency had failed to allocate back pay to the correct years for Social Security purposes—thereby harming future Social Security benefits—and asked the Board to order the Agency to report the correct allocations to SSA.  C-2 Compliance File, Tab 11 at 1-2, 5, 7.  In addition, the second enforcement action raised, once again, the Agency's alleged SF-50 coding error.  The Agency responded that Mr. Rosario-Fabregas had received the correct back pay and benefits, which were accurately reflected in the SSA earnings statement, and attached a May 10, 2013 memorandum from DFAS employee Ms. Casey Prunier for support.  Mr. Rosario-Fabregas replied that Ms. Prunier was wrong and that the annual allocation of his back pay to Medicare may also be incorrect.  C-2 Compliance File, Tab 13 at 5-7.  The AJ agreed, finding on December 3, 2013, that the Agency was not in full compliance, granting the second enforcement petition in part, and ordering the Agency to reconcile the discrepancies between its data and the SSA earnings report, make any necessary corrections, and explain them.  *Rosario-Fabregas v. Army*, No. NY-0752-10-0127-C-2, 2013 WL 6705702, slip op. at 6-7 (M.S.P.B. Dec. 3, 2013); Final Decision at *1.

The Agency responded with a declaration from Ms. Prunier dated January 22, 2014.  Her declaration now agreed with Mr. Rosario-Fabregas' challenge to the accuracy of the April 26, 2013 SSA earnings statement and stated that she had submitted a request to SSA with significantly different Social Security and Medicare allocations to correct Mr. Rosario-Fabregas' record.  X-1 Compliance Referral File, Tab 3 at 3, Attach. 1 at 1-2, Attach. 1 (Ex. B).  In the interim, on January 6, 2014, Mr. Rosario-Fabregas had filed a petition seeking full-Board

review of the AJ's December 3, 2013 initial decision, attaching two June 29, 2013 letters from DFAS and one September 5, 2013 letter from the Agency, which together stated that he owed at least $4833.27 in overpaid 2011 back pay. Mr. Rosario-Fabregas argued that this attempted clawback called into question the Agency's earlier guarantees that his back pay and benefits were correct. C-2 Petition for Review File, Tab 1 at 5-6; *id.*, Attach. 1, 2. He also alleged the incorrect coding on his SF-50 caused the allocation problems. On January 31, 2014, the Agency responded that he had waived both arguments by not raising them in his petition, and, in any case, had not been harmed by any SF-50 coding errors, as he had been reinstated with back pay and benefits as required, and the SF-50 was no longer in his personnel file. On September 11, 2014, the full Board dismissed the petition for enforcement regarding the SSA-allocations issue, finding that the Agency had complied with the AJ's December 3, 2013 initial decision, and advising Mr. Rosario-Fabregas to raise any new compliance issues in a third petition for enforcement if he could show good cause for delay. *Rosario-Fabregas v. Dep't of Army*, Nos. NY-0752-10-0127-C-2, NY-0752-10-0127-X-1, 2014 WL 5410707, at *1, *2 n.3, *3-4 (M.S.P.B. Sept. 11, 2014). But the Board granted Mr. Rosario-Fabregas' petition for review on other issues related to his life insurance and retirement plan, remanding those issues to the AJ, and, in so doing, also ordered the AJ to have the parties provide an update on the status of Ms. Prunier's January 22, 2014 reallocation request to SSA. *Id.* at *6; Final Decision at *1.

On remand, the Agency filed another declaration from Ms. Prunier—this one dated October 9, 2014—reaffirming that her January 22, 2014 request to SSA was sufficient to correct Mr. Rosario-Fabregas' allocations.[1] On December

---

[1]    A day earlier, on October 9, 2014, Mr. Rosario-Fabregas filed a third petition for enforcement (discussed

24, 2014, the Agency, however, reported to the AJ that SSA, for unexplained reasons, had not timely received the adjusted Social Security and Medicare allocations Ms. Prunier sent on January 22, 2014. Instead, SSA received her reallocation request nearly a year later, on December 16, 2014. SSA produced new Social Security and Medicare allocations on December 23, 2014 and December 30, 2014, which differed in their amounts from those in Ms. Prunier's January 22, 2014 request. When filing these SSA reports, Mr. Rosario-Fabregas renewed his complaint that the Agency still was not in compliance with the Board's November 30, 2011 Order. B-1 Remand File, Tab 8 at 2-4, Attach.; B-1 Remand File, Tab 10, Attach. at 5. On September 6, 2016, the AJ ordered the Agency to "(1) have DFAS contact SSA in order to determine whether SSA made the correct allocations covering the period between the appellant's removal and his reinstatement and (2) provide the Board with documentation as to DFAS's action in this regard." *Rosario-Fabregas v. Army*, No. NY-0752-10-0127-B-1, 2016 WL 4743987, slip op. at 6-7 (M.S.P.B. Sept. 6, 2016); Final Decision at *2.

The Agency then filed another declaration from Ms. Prunier—this one dated October 11, 2016—stating that Mr. Rosario-Fabregas' "total gross back pay" was $174,568.34 and that she had submitted still more reallocations to SSA on October 5, 2016, this time applying an annual Social-Security wage cap before reallocating back pay received in 2012 to 2010 and 2011. X-2 Compliance

---

*infra*), attaching an SSA earnings report showing Social Security and Medicare allocations that were still unchanged from the earlier-filed April 26, 2013 report that predated Ms. Prunier's January 22, 2014 alleged corrections. *See* C-3 Compliance File, Tab 1 at 622 of 635.

Referral File, Tab 1, Ex. A (¶¶ 3, 10); *id.*, Ex. A (Attach. 2).[2] Mr. Rosario-Fabregas responded that the annual wage cap did not apply to his case under the controlling regulations, and Ms. Prunier's reliance on it made for a request with unreasonable non-incremental Social Security allocations. *See* X-3 Compliance Referral File, Tab 4 at 3-4. He then filed a report from SSA dated November 18, 2016 showing allocations that differed not only from those persisting in each SSA report he had received since the one dated December 30, 2014, but also from Ms. Prunier's latest request. X-3 Compliance Referral File, Tab 5, Attach. 1. Citing Mr. Rosario-Fabregas' concerns, on June 9, 2017, the Board's acting clerk ordered the Agency to provide the Social Security and Medicare deductions made for each pay period, a narrative explanation of how they were determined, and a clear explanation that they were properly allocated to the year of the relevant pay period and not as a lump sum to the year of the back pay payment. X-2 Compliance Referral File, Tab 3 at 2.

In response, the Agency filed an October 20, 2017 declaration from DFAS employee Mr. Erron Jackson stating that the "total back pay to be allocated"—or "total allocable back pay"—was $150,406.08, of which $148,862.48 had been paid in 2012 and $1543.60 had been paid in 2013. Mr. Jackson agreed with Mr. Rosario-Fabregas that the Social Security wage cap should not apply before reallocation of

---

[2] Ms. Prunier also listed various payments and refunds made to Mr. Rosario-Fabregas and deductions from his gross back pay. Among these, she identified that, on March 19, 2013, Mr. Rosario-Fabregas "was erroneously paid back pay for 11 pay periods" resulting in him being "paid a gross amount of $1,543.60 for January 16, 2010 through June 5, 2010," and that "[a]n indebtedness will be created for this erroneous money." *Id.* (¶ 8); *see also id.* (Attach. 1 at 1).

back pay in his case and, accordingly, DFAS had prepared and attempted to submit another reallocation request to SSA, which differed substantially from each of Ms. Prunier's prior ones. *See* X-2 Compliance Referral File, Tab 12, Attach. (¶ 2). But, this time, SSA allegedly responded to DFAS by insisting that DFAS wait until Mr. Rosario-Fabregas' tax year wages appear on SSA's records and then resubmit the newest reallocation request. Mr. Jackson further declared that DFAS was awaiting confirmation from SSA that this condition had been met—which SSA advised could take until early 2019 (i.e., "up to a year after the end of a current tax year")—to resubmit its reallocation request. *See id.* (¶ 4). Mr. Rosario-Fabregas responded by asking that the Agency be ordered to correct his SF-50 to aid in remedying his allocations and by attaching an SSA report dated August 31, 2018 showing the same allegedly erroneous allocations that had been in place since at least the earlier-filed November 18, 2016 report, which predated Mr. Jackson's declaration. X-2 Compliance Referral File, Tab 20, Attach. 1 at 2.

### THIRD PETITION FOR ENFORCEMENT

On October 9, 2014, taking the Board's advice from the September 11, 2014 remand Order, Mr. Rosario-Fabregas filed a third petition for enforcement realleging that the Agency's submissions in the first enforcement action reported several inconsistent values for the amount of back pay owed and actually paid—repeating the numbers he had cited in the second enforcement action—and again asking the Board to order clarification of these discrepancies and payment of any difference owed. *See* C-3 Compliance File, Tab 1 at 30-31, 33 of 635. Likewise, the petition also re-alleged that the Agency's SF-50 coding errors caused its compliance failures and asked the Board to order issuance of a corrected form. The Agency conceded that the issued SF-50 contained a coding error and provided a declaration stating that the error was harmless. The Agency also provided a separate declaration by Ms. Prunier asserting that

DFAS relied on the Board's November 30, 2011 Order to process Mr. Rosario-Fabregas' back pay and benefits, not the incorrect coding on the SF-50. C-3 Compliance File, Tab 3, Exs. A (¶ 3), C (¶ 2). Mr. Rosario-Fabregas criticized this response for not clarifying the amount of his back pay and insisted that the Agency first resolve the back-pay issue before correcting his SSA allocations to ensure that the latter would be correct. C-3 Compliance File, Tab 4 at 15 of 18; C-3 Compliance File, Tab 5 at 3. On September 8, 2016, the AJ acknowledged Mr. Rosario-Fabregas' claim that the Agency had variously stated his back pay as $168,515.12, $154,738.32, $158,219.12, $158,905.52, $179,288.24, and $175,815.35, and, accordingly, ordered the Agency to "(1) have DFAS determine the amount of the gross back pay and (2) submit a clear explanation of DFAS's computations," and provided Mr. Rosario-Fabregas with 20 days to respond thereafter. *Rosario-Fabregas v. Army*, No. NY-0752-10-0127-C-3, 2016 WL 4743988, slip op. at 6-7 (M.S.P.B. Sept. 8, 2016) (hereinafter C-3 Initial Decision); Final Decision at *2. But the AJ declined to order correction of the SF-50, finding that the coding error was not a "pivotal issue" for the Agency's compliance. C-3 Initial Decision, slip op. at 6.

In response, on October 24, 2016, the Agency refiled Ms. Prunier's October 11, 2016 declaration, which it had recently submitted in the second enforcement action and which indicated that Mr. Rosario-Fabregas' "total gross back pay" was a different number—$174,568.34. X-3 Compliance Referral File, Tab 3, Ex. A. Mr. Rosario-Fabregas responded on November 21, 2016 that he had "serious concerns" about the Agency's new back pay computations but without identifying any specific errors in the calculated 2010 to 2012 back pay. *See* X-3 Compliance Referral File, Tab 5 at 2-4. The parties' remaining substantive filings in the third enforcement action duplicated all but one of their subsequent filings in the second enforcement action, including Mr. Jackson's October 20, 2017 declaration that

the "total back pay to be allocated" was $150,406.08. The Agency's concurrent filings did not address the inconsistencies between Mr. Jackson's declaration and Ms. Prunier's October 11, 2016 declaration.

## THE BOARD'S DECISION

On August 1, 2022, in a consolidated decision, the full Board found the Agency in compliance with the AJ's September 6, 2016 SSA-related order and the AJ's September 8, 2016 back-pay-related order and dismissed both compliance actions. Final Decision at *1.

Regarding the back-pay issue, the Board found Ms. Prunier's October 11, 2016 declaration "detail[ed] the amount of back pay paid to [Mr. Rosario-Fabregas]" by "set[ting] forth her calculations regarding gross and net back pay, including interest paid on the back pay amount." *Id.* at *2. The Board noted that Mr. Rosario-Fabregas did not "present[] a specific objection to [Ms. Prunier's] back pay or interest calculations," and found "[a]ccordingly, . . . that the [A]gency properly calculated and paid the back pay and interest due." *Id.* But the Board also found that Mr. Jackson's October 20, 2017 declaration "reported that [Mr. Rosario-Fabregas'] total back pay was $150,406.08," of which "$148,862.48 was paid to [him] in January 2012" and "[t]he remaining $1543.60 was paid in 2013." *Id.* at *3. Second, the Board found that Mr. Rosario-Fabregas' October 26, 2017 filing "alleg[ed] that the [A]gency's calculations of back pay were incorrect" but "did not specify what he believed the correct back pay amounts to be." *Id.* at *3. Finally, the Board found the Agency in compliance with the AJ's September 8, 2016 order to ascertain and explain Mr. Rosario-Fabregas' gross back pay because: (1) the Agency "indicated that it paid [him] back pay in the amount of $150,406.08"; (2) the Agency "provided an adequate explanation of how the back pay . . . amount[ was] determined"; and (3) "[Mr. Rosario-Fabregas] ha[d] not alleged any specific error in these amounts." *Id.* at *4. The Board's

decision made no attempt to explain how Ms. Prunier and Mr. Jackson could both be accurately reporting Mr. Rosario-Fabregas' back pay. Instead, the Board faulted Mr. Rosario-Fabregas for failing to identify a correct back pay number, even though its original November 30, 2011 Order directed the Agency, not Mr. Rosario-Fabregas, to identify the correct back pay amount.

Regarding the SSA-allocations issue, the Board found that Mr. Jackson's declaration stated that DFAS "had confirmed that it had provided all necessary documentation to SSA to enable it to properly allocate [Mr. Rosario-Fabregas'] wages," "but that, under SSA's standard procedure it takes up to a year after the end of a current year for reported wages to appear on an individual's record." *Id.* at *3. The Board also found that "the [A]gency ha[d] provided an adequate explanation of how the . . . benefits amounts were determined." *Id.* at *4. Second, the Board found that, although various of Mr. Rosario-Fabregas' subsequent filings alleged SSA's allocations were not correct, they did not identify which allocations he believed to be incorrect or any specific errors or inaccuracies. *Id.* As with the back-pay issue, the Board faulted Mr. Rosario-Fabregas for failing to know the correct Social Security and Medicare allocations. Finally, although not so expressly stated, these findings were presumably the Board's basis for holding the Agency in compliance with the AJ's September 6, 2016 order to contact SSA to ensure the allocations were correct. *See id.* at *3-4.

The Board denied Mr. Rosario-Fabregas' request for a corrected SF-50, finding that his April 9, 2019 filing "did not provide any support for [his] claim that [an] additional SF-50[ was] required to effectuate the Board's [O]rder regarding back pay and [Social Security] contributions." *Id.* at *4.

DISCUSSION

"The Board's decision must be sustained unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *Conant v. Off. of Pers. Mgmt.*, 255 F.3d 1371, 1374 (Fed. Cir. 2001); 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938).

From shortly after the Board's reinstatement Order of November 30, 2011, and before this court, Mr. Rosario-Fabregas has argued that the Agency did not correctly compute his back pay and related benefits. As shown above, at many points along the way, the AJ and the Board agreed with him and remanded the case to the Agency for correction or explanation of the underlying calculations. Throughout this lengthy process, Mr. Rosario-Fabregas identified, inter alia, three errors by the Agency.

First, he argues that the Agency erred when issuing the SF-50 that canceled his removal by coding it to indicate that he was being reinstated by an appointing officer without back pay, rather than by order of the Board with back pay. Mr. Rosario-Fabregas alleges that, because of the incorrect coding, the SF-50 did not trigger proper restoration of his benefits and back pay as it otherwise would have. Instead, the Agency, DFAS, and SSA were allegedly only prompted to attempt to manually restore his back pay and benefits via a complicated and error-prone ad-hoc process only after he noticed the errors and sought enforcement. *See* Add. Pet. Inf. Br. at 5-7, 21, 25. Accordingly, Mr. Rosario-Fabregas argues that, given SSA earnings statements showing that this ad-hoc process has not properly restored his benefits, the Board erred in not ordering the Agency to issue a corrected SF-50. *See* Pet. Inf. Br., ¶¶ 2, 4, 6. The

Agency admits the coding error but asserts that it had no impact on restoring Mr. Rosario-Fabregas' back pay or benefits. Resp. Inf. Br. at 10-11. Throughout the lengthy enforcement proceedings, and in his briefs to this court, Mr. Rosario-Fabregas has provided no evidence that a correctly coded SF-50 would have had any impact on the Agency's attempt to satisfy the Board's November 30, 2011 reinstatement Order. Accordingly, we agree with the Board that Mr. Rosario-Fabregas has not provided any support for his claim that an additional SF-50 is needed to effectuate compliance with the Board's reinstatement Order, and we therefore hold that the Board did not err in denying his request to order one.

But Mr. Rosario-Fabregas is correct that the Board erred regarding his other two issues, namely the Agency's failure to correctly establish the amount of his gross back pay and calculate the related Social Security and Medicare allocations.

Regarding the back-pay issue, the Board repeats the Agency's own mistakes, finding compliance by arbitrarily relying on inconsistent back pay calculations and making no attempt to explain those inconsistencies. As noted above, in the third enforcement action, the Agency resubmitted Ms. Prunier's October 11, 2016 declaration to show compliance with the AJ's September 8, 2016 order requiring the Agency to calculate and clearly explain the correct amount of gross back pay. This declaration stated, inter alia, that "total gross back pay" was $174,568.34 and that Mr. Rosario-Fabregas was paid $1543.60 in error in 2013, for which an equivalent indebtedness would be created on his account. The Board expressly relied on this declaration to resolve the back-pay issue, citing it to find that "the [A]gency properly calculated and paid the back pay and interest due." Final Decision at *2. Separately, in the second enforcement action, the Agency submitted Mr. Jackson's October 20, 2017 declaration to show compliance with the AJ's September 6, 2016 order and the acting clerk's June 9,

2017 follow-up order requiring the Agency to determine and explain the correct Social Security and Medicare allocations. This declaration stated that "total back pay to be allocated"—or "total allocable back pay"—was $150,406.08, and that this number properly included the $1543.60 paid to Mr. Rosario-Fabregas in 2013. The Board, despite already relying on Ms. Prunier's calculations, also expressly cited Mr. Jackson's declaration as stating that "total back pay" was $150,406.08 and that the Agency had instead paid Mr. Rosario-Fabregas this amount. *See id.* at *3. In other words, the Board found that both $174,568.34 and $150,406.08 were the amount of back pay to be paid, and even, by implication, that Mr. Rosario-Fabregas both did and did not owe the Agency $1543.60.[3]

On appeal, Mr. Rosario-Fabregas continues to point out the inconsistent calculations of back pay made by the Agency and accepted by the Board, asking that we find that the Board erred in not ordering the Agency to correctly recalculate his back pay. *See* Add. Pet. Inf. Br. at 10-11, 18, 20-21, 25; Pet. Inf. Br., ¶ 6. The Agency argues that the Board relied on Ms. Prunier's October 11, 2016 declaration for the computation of Mr. Rosario-Fabregas' back pay, *see* Resp. Inf. Br. at 13, and cites Mr. Jackson's declaration for the SSA-allocation issue but without any recognition that Mr. Jackson's declaration includes a significantly different back pay calculation, *id.* at 7. The Agency's contention that the Board relied on Ms. Prunier's $174,568.34 back pay

---

[3]    Indeed, the AJ credited Mr. Rosario-Fabregas' allegation that the Agency has stated at least six different back pay amounts. Including the two additional values cited thereafter by Ms. Prunier and Mr. Jackson and relied on by the Board, this suggests that the Agency has stated at least eight different back pay amounts—ranging from as low as $150,406.08 to as high as $179,288.24—over the course of this dispute without meaningfully explaining the differences.

number is undermined by the Boards' finding that the Agency correctly paid Mr. Rosario-Fabregas $150,406.08 in back pay.  Final Decision at *3-4.  The Agency thus fails to address and defend the Board's final decision that the Agency has fully complied with the November 30, 2011 re-instatement Order.  Notably, the Agency does not support the Board's view that Mr. Rosario-Fabregas is at fault for failure to identify the correct back pay number and related allocations of back pay to provide for Social Security and Medicare benefits.  Mistakenly, the Agency argues that "Mr. Rosario-Fabregas does not explain why he believes the Army is noncompliant."  Resp. Inf. Br. at 15.  For Mr. Rosario-Fabregas, compliance requires the Agency to produce correct back pay numbers for the relevant years, with Social Security and Medicare allocations that correctly reflect those numbers.

Throughout the enforcement proceedings, Mr. Rosario-Fabregas has asked the Board to require the Agency to produce correct back pay award numbers, and to work with DFAS and SSA to achieve correct allocations of awarded back pay to provide for Social Security and Medicare benefits.  In the extended back-and-forth exchanges between the AJ, the Board, and the Agency, numerous possible back-pay numbers and numerous possible SSA allocations have been asserted by the Agency to be correct.  In the end, the evidence before the Board pointed to the declarations of both Ms. Prunier and Mr. Jackson as being correct, and the Board accepted both declarations as accurate, with no recognition of or justification for the inconsistencies.  No evidence has been adduced by the Agency or relied upon by the Board to justify the arbitrary conclusion that the Agency has complied with regard to the back-pay issue.

Regarding the SSA-allocations issue, it is not clear on the record before this court that SSA's allocation of Mr. Rosario-Fabregas' back pay to Social Security and Medicare is correct.  This is particularly so when the Agency and DFAS have repeatedly submitted sworn declarations that

their allocations are correct, only to cite new regulations or procedures—many of which were first raised by Mr. Rosario-Fabregas—and drastically change the allocations. This happened no fewer than five times in as many years. In any case, the parties do not appear to dispute that the related allocations depend at least in part on the amount of gross back pay, nor did the Board find otherwise. Thus, just as Mr. Rosario-Fabregas argued below, the Agency must resolve the outstanding back-pay issue before it can definitively resolve the SSA-allocations one. Accordingly, because the Board lacked substantial evidence to resolve the back-pay issue, it also lacked substantial evidence to find that the Agency had complied with the AJ's September 6, 2016 order to determine and show that SSA had correctly allocated Mr. Rosario-Fabregas' back pay to Social Security and Medicare.[4]

---

[4]  To the extent the Board drew any conclusions by relying on its finding that Mr. Jackson "stated that DFAS had confirmed that it had provided all necessary documentation to SSA to enable it to properly allocate [Mr. Rosario-Fabregas'] wages," those conclusions are not supported by substantial evidence. As Mr. Rosario-Fabregas argues on appeal, Mr. Jackson went on to say that DFAS was still awaiting confirmation from SSA that his 2017 tax year wages had appeared on SSA records—which could happen as late as early 2019—after which DFAS would need to "resubmit" its reallocation request to SSA. Mr. Rosario-Fabregas correctly notes that there is nothing in the record showing that DFAS has since received such confirmation and resubmitted its request, let alone that such resubmitted request has been successfully processed by SSA. As Mr. Rosario-Fabregas points out, his August 31, 2018 SSA earnings report—the most recent one of record in this case—does not reflect the reallocation request included with Mr. Jackson's October 20, 2017 declaration. See Add. Pet. Inf. Br. at 15-16. Indeed, as noted above, it includes the same values for the 2010 to 2012 period as his November 18, 2016 report, which predated Mr. Jackson's declaration.

CONCLUSION

The Agency was supposed to comply with the Board's reinstatement Order in 60 days, not 11 years (and counting). Although we affirm the Board's decision that Mr. Rosario-Fabregas has provided no evidence to merit ordering the Agency to issue a new or corrected SF-50, we vacate its decision that the Agency has complied with the AJ's September 6, 2016 and September 8, 2016 orders and remand to the Board for the limited purpose of, for the 2010 to 2012 period: (a) determining the correct amounts for Mr. Rosario-Fabregas' back pay; (b) determining the correct amounts for Mr. Rosario-Fabregas' Social Security and Medicare allocations; and (c) correcting any errors in Mr. Rosario-Fabregas' back pay, Social Security allocations, or Medicare allocations.

Accordingly, the final decision of the Board is vacated, and the case is remanded to the Board for further proceedings as specified in this opinion.

**VACATED AND REMANDED**

COSTS

No costs.