# United States Court of Appeals for the Federal Circuit

2009-3095

ROSEMARY O. SLATTERY,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

<u>Thomas G. Roth</u>, Law Offices of Thomas G. Roth, of West Orange, New Jersey, argued for petitioner.

<u>Michael N. O'Connell</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were <u>Michael F. Hertz</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Kirk T. Manhardt</u>, Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3095

ROSEMARY O. SLATTERY,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of the Merit Systems Protection Board in AT0752010756-C-1.

_____

DECIDED: January 6, 2010

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> NEWMAN. Dissenting opinion filed by <u>Chief Judge</u> MICHEL.

NEWMAN, <u>Circuit Judge</u>.

Ms. Rosemary O. Slattery requests review of the decision of the Merit Systems Protection Board ("MSPB" or "Board"), <u>Slattery v. Dep't of Justice</u>, No. AT-0752-01-0756-C-1 (M.S.P.B. Aug. 13, 2008) ("Board Op."), in which the Board held that

the agency's[1] non-selection of Ms. Slattery for any of the law enforcement positions for which she applied was not a violation of the Negotiated Settlement and Last Chance Agreement ("NSLCA") between Ms. Slattery and the DHS. We affirm the Board's decision.

BACKGROUND

Ms. Slattery was employed by the INS as a supervisory immigration officer, GS-12, when she was arrested and charged with the crime of obtaining money under false pretenses through a scheme in which she purchased expensive items and returned substitute items of a lesser value in order to obtain a refund of the higher price. Ms. Slattery pleaded nolo contendere, paid restitution, and fulfilled the sentence of community service.

The agency first suspended and then removed Ms. Slattery from service. During her appeal of the removal, the parties entered into the NSLCA. Under the NSLCA, the agency agreed to reinstate Ms. Slattery to a non-law enforcement position with back pay and attorney fees, established a three-year probationary period during which she was required to comply with specified "Last Chance Provisions," and barred her from applying for any law enforcement or officer corps position within the agency for one year. The relevant paragraphs of the NSLCA include:

> 4. It is further agreed that Ms. Slattery will remain in this position with the Agency, and its successor component within the Department of Homeland Security ("DHS"), for a period of not less than one year from the date of this Agreement. During this year, Ms. Slattery is barred from applying for any law enforcement position or officer corps position within the DHS. Nothing in this agreement is intended to prevent Ms. Slattery from applying for another position with an Agency other than DHS.
> . . . .

---

[1] Agency refers to the Department of Homeland Security ("DHS") and a predecessor agency, the Immigration and Naturalization Services ("INS").

11. This Settlement Agreement represents the full and complete agreement of, and shall be executed in good faith by, the parties hereto. No other promises shall be binding unless placed in writing and signed by both parties.

. . . .

23. The duration of the Last Chance Provisions of this Settlement Agreement shall be three (3) years, which begins from the date this Agreement is fully executed. At the expiration of the three years, the Last Chance Provisions of this Agreement shall become null and void, and any reference to the indefinite suspension or removal action shall be removed from Ms. Slattery's Official Personnel File.

The NSLCA was entered into the MSPB record for enforcement purposes. After the one-year bar expired, Ms. Slattery applied for twenty-four positions in the agency in the area of law enforcement. She was not selected for any of them. Ms. Slattery then filed a petition with the MSPB to enforce the NSLCA, arguing that the agency breached the NSLCA by failing to give her applications "good faith" consideration. Ms. Slattery argued that she possessed superior qualifications for at least some of the positions for which she applied, and, therefore, the agency must have held her past criminal conduct against her. The MSPB found that Paragraph 11's requirement for "good faith" does not require that the agency select Ms. Slattery for any law enforcement position. Holding that "nothing in either cited provision, separately or together, requires that the appellant be selected for any position," the Board ruled that the agency did not breach the NSCLA. Board Op. at 3. This appeal followed.

DISCUSSION

The MSPB's decision shall be sustained on appeal unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. §7703(c). A settlement agreement is a contract, and is reviewed, like all contracts, to ascertain its meaning including, if required to

implement its purposes, determination of contractual intent and mutual understanding. See Conant v. Office of Pers. Mgmt., 255 F.3d 1371, 1376 (Fed. Cir. 2001); Greco v. Dep't of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988). However, when a contract's words and meaning are unambiguous, its terms are not subject to variation. George Hyman Constr. Co. v. United States, 832 F.2d 574, 579 (Fed. Cir. 1987).

I

The agency states that the MSPB lacked jurisdiction over Ms. Slattery's petition for enforcement of the NSLCA because an agency's non-selection decision is not reviewable except in certain situations set by statute and not applicable here. See Edwards v. Dep't of Justice, 87 M.S.P.R. 518, 521 n.2 (2001) (exceptions to the general rule of non-review are "claims that the agency's decision was made in retaliation for whistleblowing, see 5 U.S.C. § 2302(a)(2)(A)(i); was the product of discrimination based on uniformed service, see 38 U.S.C. §§4311, 4324; or was violative of the candidate's veterans' preference rights, see 5 U.S.C. §3330a(d)(1)"). Absent a designated exception, non-selection is not appealable to the MSPB. However, the MSPB does have authority to determine whether the agency complied with a settlement agreement. "[W]hen the issue is compliance with a settlement agreement, compliance review is not limited to those aspects of the settlement for which an independent appeal is available." Manley v. Dep't of the Air Force, 91 F.3d 117, 119 (Fed. Cir. 1996). Thus, the MSPB had jurisdiction to resolve whether the NSLCA agreement was "executed in good faith" by the agency.

II

Ms. Slattery argues that the NSLCA precludes the agency from considering her past criminal record, in evaluating her applications for law enforcement positions. She states

that Paragraph 4 of the NSLCA, which barred her from applying for any law enforcement position or officer corps position for one year, read with Paragraph 11's requirement of good faith, requires the agency to consider her applications, after the expiration of the one year bar, as if the criminal conduct had not occurred. The MSPB held in effect that the NSLCA does not include or imply a requirement that the agency must ignore her history in evaluating her application for a law enforcement or officer corps position.

Ms. Slattery argues that in reviewing her petition for enforcement the Board is required to review the qualifications of the applicants who were actually selected for the positions for which she applied, in order to ascertain whether Ms. Slattery possessed superior qualifications, and, if she did, to rule that her non-selection was a breach of the NSLCA. This argument requires the premise that the agency was not acting in good faith if it took her criminal past into account when evaluating her application for a law enforcement position. The Board held that consideration of her past was not a breach of "good faith." We agree that a contrary mutual understanding cannot be inferred from the NSLCA, which states that "no other promises shall be binding unless placed in writing and signed by both parties." NSLCA ¶ 11.

We conclude that the NSLCA does not require the agency to ignore Ms. Slattery's history, and that "good faith" does not require pretending that this history does not exist. If it had been intended that knowledge of her past conduct could have no role in evaluating her applications for law enforcement positions after one year, the NSLCA reasonably would have included such a critical provision, for a mutual requirement of "good faith" does not require concealing the truth. Since the basis of Ms. Slattery's request for review by the MSPB of the agency's hiring choices was that the agency had not acted in good faith if it

had considered Ms. Slattery's past record, there is no ground for MSPB review of the agency's hiring choices. Thus, the MSPB did not err in denying Ms. Slattery's request for discovery and related inquiry as to the agency's selection for the positions for which she had applied.

We affirm the Board's holding that the agency did not breach the NSLCA by not selecting Ms. Slattery for a law enforcement or officer corps position.

<u>AFFIRMED</u>.

# United States Court of Appeals for the Federal Circuit

2009-3095

ROSEMARY O. SLATTERY,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Petition for review of the Merit Systems Protection Board in AT0752010756-C-1.

MICHEL, <u>Chief Judge</u>, dissenting.

Petitioner Rosemary Slattery appeals the Merit Systems Protection Board's ("MSPB's") final decision that as a matter of law the Agency[1] could not have breached the Negotiated Settlement and Last Chance agreement ("NSLCA") entered into by the Agency and Ms. Slattery. Because the MSPB's interpretation of the NSLCA would render superfluous and meaningless the one-year ban on Ms. Slattery's applying for law enforcement positions within the Agency and would nullify the good-faith clause, I would reverse and remand for fact-finding in light of the correct construction of the agreement.

Settlement agreement disputes are governed by contract principles. <u>Kasarsky v. Merit Sys. Prot. Bd.</u>, 296 F.3d 1331, 1336 (Fed. Cir. 2002). "A settlement agreement is a contract, and its construction is a question of law which this court reviews de novo."

---

[1] As in the majority opinion, "Agency" refers interchangeably to the Department of Homeland Security ("DHS") and Immigration and Naturalization Services ("INS").

Conant v. OPM, 255 F.3d 1371, 1376 (Fed. Cir. 2001). "If there is an ambiguity in the formation of the agreement or during its performance, we implement the intent of the parties at the time the agreement was struck." Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998). Words of the agreement are given their ordinary meaning unless the parties intended otherwise. Id.

There are three possible ways in which Ms. Slattery could allege the Agency erred in handling her applications for law enforcement positions. First, there might have been some problem with the Agency's process of comparing Ms. Slattery to other candidates, such that Ms. Slattery was not selected even though she should have been. Second, the Agency might have erred somehow by taking into account Ms. Slattery's criminal background. Finally, the Agency might never have given Ms. Slattery's applications any consideration at all. Given the lack of discovery to date on the Agency's selection process, it was impossible for Ms. Slattery to clearly allege any particular one of these theories, and given the lack of fact-finding by the MSPB, we cannot rule out the possibility of any of them having occurred.[2] We can only determine

_____

[2] In her letter initiating the MSPB enforcement action, Ms. Slattery alleged only that she had "applied for approximately 24 law enforcement and 6 non-law enforcement positions with DHS" and that, given her non-selection for any of these positions, it was reasonable to assume that "the Agency is violating the letter and spirit of the NSLCA by continuing to use [Ms. Slattery's] prior misconduct as an unspoken reason to justify her non-selection." I do not read this as limiting Ms. Slattery's theories to the single allegation that the Agency considered her applications and failed to select her because it paid some allegedly improper attention to her criminal background. Rather, I read this as a broad allegation that the Agency had used its knowledge of Ms. Slattery's criminal background to take some unspecified action that resulted in her never being selected for any position for which she applied. Because Ms. Slattery was not privy to the inner workings of the Agency's selection process, she could not make a more specific allegation about the improper Agency action. As I have noted, that action could have been either an acknowledgement when comparing Ms. Slattery's credentials to those of the other applicants that Ms. Slattery had a criminal past (the theory

whether any of these theories, if ultimately proved by Ms. Slattery, would constitute a breach of the settlement agreement.

The MSPB addressed the first theory. It understood Ms. Slattery to be arguing that the Agency was "not in compliance with the" NSLCA because "the [A]gency failed to select [her] for any one of the 30 vacancies."[3] On appeal, Ms. Slattery states that "contrary to the [MSPB]'s suggestion in its decision, [she] does not argue that there is an express provision in the NSLCA which requires the Agency to select her for any of the positions for which she applied." At oral argument, Ms. Slattery made clear that she was only alleging that the Agency breached the NSLCA by not considering her for positions, and that she was not alleging that the Agency breached the NSLCA by not hiring her for a position. Regardless of whether Ms. Slattery's filings with the MSPB could be reasonably interpreted to allege the Agency breached the NSLCA by not selecting her, Ms. Slattery has expressly abandoned this argument on appeal, and it need not be considered further.

---

considered by the majority) or a refusal to give Ms. Slattery's applications full consideration. Had Ms. Slattery been given the opportunity to take discovery on the selection process, I might reasonably be able to fault her for failing to choose one of these allegations. But given the lack of any discovery or fact-finding, we cannot rule out any of these theories of breach.

[3] Although the MSPB characterized Ms. Slattery's argument as urging that the Agency erred by failing to select her, the MSPB also ruled on the other theories when it found "no contractural [sic] duty in the agreement that addresses the [A]gency's consideration of or action on the appellant's applications for vacant positions." This finding effectively foreclosed the possibility that either (1) the Agency's consideration of Ms. Slattery's criminal background, or (2) the Agency's failure to read Ms. Slattery's applications at all, could constitute a breach of the settlement agreement. The majority rightly holds that the first of these possibilities could not constitute a breach but fails to consider the other possibility.

The majority addresses the second theory. It characterizes the issue as whether the Agency was "require[d] . . . to ignore Ms. Slattery's history" and to "pretend[] that this history d[id] not exist." I agree with the majority that the Agency would be permitted (indeed, expected) to consider Ms. Slattery's criminal behavior when evaluating her applications, especially those for law enforcement positions.

But I do not agree with the majority that the elimination of the first two theories Ms. Slattery might allege resolves the case. There is more at stake here than whether the Agency was permitted to consider Ms. Slattery's earlier criminal conduct when deciding whether to select her for a law enforcement position. Ms. Slattery suggests that it is possible that the Agency never considered her applications at all. The majority neglects this possibility in affirming the MSPB. As discussed below, I would find that, if ultimately proven, a complete refusal by the Agency to consider Ms. Slattery for open positions after the expiration of her one-year ban would constitute a breach of the settlement agreement.

The portions of the NSLCA relevant to this question provide:

4. It is further agreed that Ms. Slattery will remain in this [non-law enforcement] position with the Agency, and its successor component within the [DHS], for a period of not less than one year from the date of this Agreement. During this year, Ms. Slattery is barred from applying for any law enforcement position or officer corps position within the DHS. Nothing in this agreement is intended to prevent Ms. Slattery from applying for another position with an Agency other than DHS.

. . . .

11. This Settlement Agreement represents the full and complete agreement of, and shall be executed in good faith by, the parties hereto. No other promises shall be binding unless placed in writing and signed by both parties.

The government argues that this language did not give Ms. Slattery the right to have her job applications considered for vacant positions. According to this argument, the agreement does not contain a provision governing Ms. Slattery's applications for job vacancies apart from lifting her one-year application ban. Thus, the government interprets clauses four and eleven literally and narrowly, such that Ms. Slattery may apply for vacancies after the ban expires but that the Agency need not consider her applications. The government's position is that nothing in the NSLCA addresses the Agency's consideration of her applications, meaning that the Agency could not breach the NSLCA by failing to consider those applications. In spite of the good faith clause, the government argues that a requirement that the Agency consider Ms. Slattery's applications would constitute an additional term that would have to be explicit to be enforceable. In effect, the government urges that, despite the good-faith clause, there can be no obligations implied by this agreement. By failing to address the possibility that the Agency did not even consider Ms. Slattery's applications, the majority implicitly agrees with and adopts this reasoning.

Ms. Slattery, on the other hand, argues that permitting her to apply for job vacancies but not considering her applications would render the contract illusory. Although the majority finds nothing in the agreement that affords Ms. Slattery consideration during the application process, Ms. Slattery alleges that after the expiration of the one-year ban she was entitled to full consideration along with everyone else in the applicant pool, based on all the information available to the evaluators.

I agree with Ms. Slattery. The government's reading of the NSLCA would render the one-year ban superfluous and meaningless. Instead, we must assume the parties

intended for the one-year ban to serve some purpose. For both the one-year-ban and good-faith clauses to have meaning, Ms. Slattery must be entitled after the expiration of the one-year ban to apply for job vacancies at DHS and to have her qualifications evaluated on the merits. I would therefore hold that the MSPB erred by ruling that it could not under any circumstances constitute a breach for the Agency to fail to consider Ms. Slattery for the Agency positions for which she applied. I would remand to the MSPB for discovery and evidentiary proceedings aimed at determining whether DHS did fail to consider Ms. Slattery for those positions.

Under the logic of the government's argument, the Agency must allow Ms. Slattery to apply for law-enforcement positions after the expiration of the one-year ban, but the Agency need not evaluate or even read her applications or any supporting papers; immediately after opening them, the Agency could simply throw Ms. Slattery's applications into the waste paper basket. That cannot be how the Agency is permitted to act. And yet, given the majority's refusal to address the issue, this is precisely how the majority permits the Agency to act.

Of course, I express no opinion as to whether the Agency actually breached the NSLCA by refusing to consider Ms. Slattery's applications along with those of other applicants. The MSPB did not reach this factual issue. Nor do I express any opinion as to whether, given Ms. Slattery's earlier criminal conduct, Ms. Slattery could or should have been selected for a law-enforcement position by the Agency following consideration of her applications. But the MSPB's holding that, even if Ms. Slattery's applications were never read by the Agency, no breach was possible as a matter of law was, in my opinion, legally incorrect as based on an unreasonable construction of the

terms of the settlement agreement.  Because I would reverse and remand, I respectfully

dissent.