NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAULTON D. ALLEN,**
*Petitioner,*

v.

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent.*

---

2010-3088, -3178

---

Petition for review of the Merit Systems Protection Board in case nos. DC0752070694-C-3, DC0752070694-C-4

---

Decided: May 13, 2011

---

CAULTON D. ALLEN, Fort Washington, Maryland, pro se.

VINCENT D. PHILLIPS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director. Of counsel was SARAH M. BIENKOWSKI.

———————————————

Before DYK, MOORE, and O'MALLEY, *Circuit Judges*.

PER CURIAM.

Caulton D. Allen petitions for review of the final decision of the Merit Systems Protection Board ("Board") in *Allen v. Dep't of Veteran Affairs*, 2009 M.S.P.B. 238 (M.S.P.B. 2009), which denied Mr. Allen's petition for enforcement ("PFE") of a settlement agreement with the Department of Veterans Affairs ("the agency"). He also petitions for review of the Board's final decision in *Allen v. Dep't of Veteran Affairs*, No. DC-0752-07-0694-C-4 (M.S.P.B. May 26, 2010), which denied Mr. Allen's PFE of the same settlement agreement. We *affirm* both decisions.

## BACKGROUND

In 2007, the agency removed Mr. Allen from his position as an Equal Opportunity Specialist, GS-0360-12, for: (1) refusing to participate in an Office of Inspector General Investigation; (2) repeatedly being absent without leave; and (3) failing to follow instructions. On June 8, 2007, Mr. Allen filed an appeal with the Board challenging his removal. *See Allen v. Dep't of Veteran Affairs*, No. DC-0752-07-0694-I-1 (M.S.P.B. Sep. 6, 2007).

Shortly thereafter, on August 30, 2007, the parties agreed to resolve the appeal through a settlement agreement. In the settlement agreement, Mr. Allen agreed to, among other things, "waive and withdraw in their entirety" all proceedings against the agency, including his June 8, 2007 appeal, and to refrain from bringing any future proceedings against the agency, with the exception

of any claims arising from breach of the settlement agreement. A46-47. In return, the agency agreed to:

> remove any and all information related to Appellant's removal action from Appellant's Official personnel File (OPF), change his removal to voluntary resignation, and make the following changes:
>
> > a.  SF 50-B Notification of Personnel Action. Removal, dated May 26, 2007, will be canceled and removed, and VA will substitute a form SF 50-B Notification of Personnel Action [indicating Mr. Allen's resignation].
> >
> > b.  SF-50-B Notification of Personnel Action. Suspension, dated August 28, 2006, will be cancelled [sic] and removed.

A48 ¶ 10. Further, the agency agreed that "Human Resource Officer Jeanette Anderson, or her successor(s) . . . , if contacted for any employment inquiry or reference for the Appellant [would] provide the information contained in Exhibit 'C,'[1] and [would] truthfully respond regarding those matters required by law." A48 ¶ 12. The administrative judge ("AJ") presiding over the appeal accepted the parties' settlement agreement, entered it into the record for enforcement purposes, and dismissed Mr. Allen's appeal of his removal. Pursuant to the settlement agreement, Mr. Allen submitted his resignation.

---

[1]    Exhibit C contained a list of details about Mr. Allen's employment that the parties agreed would be disclosed to third parties in response to employment inquiries.

More than a year later, on December 30, 2008, Mr. Allen applied to the Department of Labor's Office of Workers' Compensation Programs ("OWCP") for benefits under the Federal Employees' Compensation Act ("FECA"), claiming that he sustained a compensable, work-related "mental disorder/psychiatric illness" stemming from an incident where his supervisor allegedly "burst" into his office and yelled at him. A16. In connection with Mr. Allen's FECA application, OWCP sent the agency a letter requesting specific information regarding the accuracy of Mr. Allen's claim. Noting that, "**in the absence of a full reply from the agency,** OWCP may accept the claimant's allegations as factual," the letter asked for responses to several questions, including whether Mr. Allen had any performance or conduct problems. A57 (emphasis in original). On March 27, 2009, Ms. Anderson responded to these inquiries in narrative form. She also enclosed supporting documentary evidence, including copies of Mr. Allen's Proposed Removal Notice and actual Removal Decision from his canceled removal action.

On May 11, 2009, Mr. Allen petitioned the Board for enforcement of the settlement agreement, alleging that the agency breached the agreement by: (1) providing information to OWCP that it had agreed to expunge from Mr. Allen's Official Personnel File ("OPF"); and (2) disclosing information other than that contained in Exhibit C despite having no legal obligation to do so. Though the agency admitted that it disclosed information regarding Mr. Allen's removal to OWCP, it argued that this disclosure did not violate that settlement agreement because the information came from a file other than Mr. Allen's OPF. On June 10, 2009, the AJ issued an initial decision finding that Mr. Allen failed to prove breach by the agency. *See Allen v. Dep't of Veteran Affairs*, No. DC-0752-07-0694-C-3 (M.S.P.B. Jun. 10, 2009).

Mr. Allen timely filed a petition for review ("PFR") of the initial decision. In a December 29, 2009 decision, the Board denied the PFR, but reopened the matter sua sponte to clarify the Board's case law regarding "whether an agency breaches a settlement agreement by disclosing information concerning settled adverse actions to a third party[] when the agency has agreed to provide the employee with a clean record by issuing a new SF-50 and expunging all of the adverse-action related documents from the OPF." *Allen*, 2009 M.S.P.B. 238 ¶ 6. The Board concluded that the agreement's plain language required only that the agency "remove any and all removal-related information from [Mr. Allen's] OPF, and [did] not contemplate expungement from all agency-maintained files." *Id.* ¶ 11 (internal quotations omitted). Based on this interpretation, the Board found that the agency complied with the settlement agreement by removing from Mr. Allen's OPF all documents relating to his removal. *Id.* ¶ 13. The Board also held that the agency did not breach the agreement when it disclosed removal-related information to OWCP because the agency was required by law to respond to OWCP's request and, in any event, Mr. Allen did not bargain for non-disclosure to OWCP. *Id.* ¶¶ 20-24. Consequently, the Board affirmed the initial decision's denial of Mr. Allen's PFE. *Id.* ¶ 27. Mr. Allen timely appealed this decision to this court on February 24, 2010 in *Allen v. Dep't of Veteran Affairs*, Docket No. 2010-3088.

Shortly afterwards, on March 19, 2010, Mr. Allen received a decision from OWCP notifying him that he was not eligible for FECA benefits due to his resignation from the agency. On April 8, 2010, Mr. Allen filed a petition for review of the Board's September 7, 2007 decision dismissing the appeal of his removal as settled, and "request[ed] that the Board reconsider its [December 29, 2009] final decision in this matter and reopen the appellant's appeal

based on *new*, *material*, and *relevant* evidence." A97 (emphasis in original). The OWCP's decision, Mr. Allen argued, constituted new and material evidence showing that the parties' settlement agreement was invalid due to a "mutual mistake by the parties" regarding the effect of his resignation on his entitlement to FECA benefits. A98. During the same time frame, on April 2, 2010, Mr. Allen received from the agency a response to a Freedom of Information Act ("FOIA") request. The response revealed that the removal-related documents that the agency disclosed to OWCP were separately maintained in an "unofficial settlement file." On April 20, 2010, Mr. Allen filed a supplement to his April 8, 2010 PFR, arguing that the FOIA response constituted additional new and material evidence showing that the parties' agreement was invalid. In a May 14, 2010 letter responding to Mr. Allen's April 9, 2010 PFR and April 20, 2010 supplement, the Board informed Mr. Allen that its regulations do not provide for requests for reconsideration of the Board's December 29, 2009 final decision and that he, therefore, had no further right to review by the Board. The letter also explained that Mr. Allen's appeal of the Board's final decision was pending at the Federal Circuit, apparently to note the fact that the Board no longer retained jurisdiction over the decision.

On April 20, 2010, Mr. Allen again petitioned the Board for enforcement of the settlement agreement, alleging that the agency breached the agreement by maintaining removal-related documents in his "OPF and/or another unauthorized secret personnel file." A111. The petition also claimed that the agency had been "dishonest" about the location of his OPF since his resignation. On May 26, 2010, the AJ denied Mr. Allen's petition, holding that: (1) collateral estoppel barred Mr. Allen from relitigating whether documents were expunged

from his OPF; (2) maintenance of an unofficial personnel filed did not breach the settlement agreement; and (3) Mr. Allen's claim that the agency has been "dishonest" about the location of his OPF did not allege a breach of the settlement agreement. *See Allen*, No. DC-0752-07-0694-C-4 (M.S.P.B. May 26, 2010). This initial decision became the final decision of the Board on June 30, 2010.

As noted above, Mr. Allen originally appealed the Board's December 29, 2009 decision ("2009 Final Decision") to this court on February 24, 2010 in *Allen*, Docket No. 2010-3088. On April 29, 2010, Mr. Allen sought to stay that appeal pending the outcome of the two MSPB petitions he filed in April of 2010. The stay was denied, and Mr. Allen voluntarily withdrew his appeal. After Mr. Allen's April 20, 2010 PFE was denied in *Allen*, No. DC-0752-07-0694-C-4 (M.S.P.B. May 26, 2010), he requested, and this court granted, the reinstatement of his initial appeal in *Allen*, Docket No. 2010-3088. On August 30, 2010, in *Allen v. Dep't of Veteran Affairs*, Docket No. 2010-3178, Mr. Allen appealed the Board's May 26, 2010 denial of his April 20, 2010 PFE ("2010 Final Decision"). This court consolidated Mr. Allen's appeals. We have jurisdiction over Mr. Allen's appeals of the Board's final decisions pursuant to 28 U.S.C. § 1295(a)(9).

STANDARD OF REVIEW

Our review of the Board's decisions is limited by statute. *Hamel v. President's Comm'n on Exec. Exch.*, 987 F.2d 1561, 1564 (Fed. Cir. 1993) ("We review Board decisions under a very narrow standard."). We must affirm a decision from the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C.

§ 7703(c).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The petitioner bears the burden of establishing any errors in the Board's decision.  *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998); *see also Cheeseman v. Office of Pers. Mgmt*, 791 F.2d 138, 140 (Fed. Cir. 1986).

## DISCUSSION

On appeal, Mr. Allen alleges numerous errors in both of the Board's decisions.  With respect to the Board's 2009 Final Decision, Mr. Allen argues that the Board erred in finding that the agency did not materially breach the parties' agreement.  He also argues that the Board "failed to address [his] claims of bias exhibited by the [AJ] during compliance proceedings" and, instead, "exhibit[ed] its own bias by presenting arguments on behalf of the agency." Pet. Inf. Br. at 22.  With respect to the Board's 2010 Final Decision, Mr. Allen contends that the decision: (1) failed to address his April 8, 2010 PFR challenging the validity of the parties' settlement agreement; (2) misapplied the doctrine of collateral estoppel, which improperly barred him from litigating the "issue of whether documents related to [his] removal action were properly expunged from [his] OPF"; and (3) failed to adequately address his claim that the agency was "dishonest" about the location of his OPF.

Because the Board's decision was not arbitrary, capricious, an abuse of discretion, or otherwise in conflict with law, we affirm.

I.

We turn first to the Board's 2009 Final Decision. Mr. Allen alleges that the Board erred in finding that the agency did not breach the parties' agreement by: (1) secretly maintaining a separate file holding removal-related documents "for more than a year and a half after execution of the" agreement, despite promising to remove any such documents from his OPF; and (2) disclosing removal-related documents to OWCP. *Id.* at 8-9. He also argues that, even if the agency was required to remove documents only from his OPF, the agency failed to provide evidence sufficient to demonstrate that all removal-related documents were, in fact, removed from the OPF. Mr. Allen additionally argues that he was entitled to an evidentiary hearing on the issue of whether the agency's disclosures to OWCP were truthful. Finally, he alleges bias on the part of both the AJ and the Board.

In response, the agency argues that this court should affirm the Board's decision because: (1) the agreement required the agency to remove information only from Mr. Allen's OPF, and not any other location; (2) the agreement expressly provided that the agency would truthfully disclose facts to third parties as required by law; and (3) "Mr. Allen did not bargain for non-disclosure to OWCP or for the agency to affirmatively aid him in the process." Resp. Inf. Br. at 16. The agency also contends that there is no right to an evidentiary hearing in a petition for enforcement and that Mr. Allen's assertion of bias is unsupported.

A settlement agreement is a contract, the interpretation of which is a matter of law reviewed by this court *de novo*. *Harris*, 142 F.3d at 1467 (Fed. Cir. 1998); *Greco v. Dep't of Army*, 852 F.2d 558, 560 (Fed. Cir. 1988). Whether a settlement agreement has been breached is a

factual finding, which we review for substantial evidence. *See Thomas v. Dep't of Hous.& Urban Dev.*, 124 F.3d 1439, 1441-42 (Fed. Cir. 1997). As with other contracts, our task is to "determine the intent of the parties at the time they contracted, as evidenced by the contract itself." *Greco*, 852 F.2d at 560. Where a "contract's words and meaning are unambiguous," its "terms are not subject to variation." *Slattery v. DOJ*, 590 F.3d 1345, 1347 (Fed. Cir. 2010). Only where the contract is ambiguous may we look beyond the contract to determine the parties' intent. *Id.* Consequently, we must begin by looking to the terms of the agreement to determine the parties' intent regarding the agency's obligations. *See Greco*, 852 F.2d at 560.

## A.

Mr. Allen first argues that, by maintaining removal-related documents in a secret file, the agency breached its promise to "remove any and all information related to [Mr. Allen's] removal action from [his] Official Personnel File." *See* A48 ¶ 10. The provision Mr. Allen cites is unambiguous. By its plain terms, it requires that Mr. Allen's "Official Personnel File" be expunged of removal-related documents, but says nothing as to any obligation to expunge those documents from other locations. Interpreting a similar provision in *Musick v. DOE*,[2] we held that, because the agreement "identifies only one place from which the specified material is to be removed," the "agency only obligated itself to remove pertinent material from Mr. Musick's OPF." 339 F.3d 1365, 1369. The same reasoning applies here.

---

[2] The agreement in *Musick* provided that the agency "agrees to remove all documentation relating to and culminating in Mr. Musick's removal, . . . including all documentation proposing to remove Mr. Musick from his position from his Official Personnel File (OPF)." *Musick*, 339 F.3d at 1369.

Mr. Allen's argument that the agency breached the agreement by maintaining a "secret" file containing removal documents is, thus, unavailing. When he entered into the agreement, Mr. Allen was represented by counsel, and he acknowledged that he fully understood and agreed to its provisions. Had he desired that, as part of the agreement, the agency would purge all copies of his removal documents regardless of their location, he could have bargained for such a provision. *See id.* at 1372. Any failure on Mr. Allen's part to foresee that the agency may maintain the removal documents elsewhere is no basis for departing from the unambiguous meaning of Paragraph 10. Because the provision on which Mr. Allen relies unambiguously requires removal of documents only from his OPF – and says nothing about what the agency must do with removal documents located elsewhere – the Board correctly found that the agency did not breach the agreement by maintaining removal-related documents in files other than Mr. Allen's OPF.

B.

Mr. Allen also argues that, even if the agency was required to purge removal-related documents only from his OPF, the declarations submitted by the agency to demonstrate compliance with this obligation were insufficient to prove that the agency actually removed all such documents. This argument is unpersuasive, however, because it was Mr. Allen, and not the agency, who had the burden of proving breach.

Pursuant to 5 C.F.R. § 1201.183(a), which requires an agency accused of non-compliance with an agreement to come forward with evidence of compliance, the agency submitted two sworn declarations. In the first, Ms. Anderson averred that she "instructed the Health Resource Center" ("HRC"), which maintains the agency's

OPFs, "to remove from the Appellant's OPF all documentation related to his removal from the VA, and to replace this information with an SF-50" reflecting Mr. Allen's resignation. The agency also submitted a declaration from Assistant Human Resources Officer Jennifer LuttJohan of HRC confirming that "the information contained in [Mr. Allen's] OPF which referenced his removal from [the agency] was replaced with an SF-50 stating that [Mr. Allen] resigned from the VA." A93. Ms. LuttJohan further averred that "there is no other documentation in [Mr. Allen's] OPF that shows he was disciplined or removed." *Id.* Mr. Allen, on the other hand, presented no evidence showing that the agency failed to expunge all removal-related documents from his OPF other than the fact that the agency disclosed removal documents to OWCP.

Mr. Allen's contention that the agency's declarations were insufficient to prove compliance conflates the agency's burden of moving forward with evidence of compliance with the ultimate burden of proving breach. While the agency was required to produce evidence "of the compliance actions that the party ha[d] completed, and a statement of the actions that are in process and the actions that remain to be taken," *see* 5 C.F.R. § 1201.183(a), the Board found that the agency discharged this obligation by submitting declarations averring that: (1) the agency instructed HRC to remove the relevant documents from Mr. Allen's OPF; and (2) an inspection of Mr. Allen's OPF revealed that information related to his removal had been removed and was replaced with an SF-50 reflecting Mr. Allen's resignation. Once the agency satisfied this burden of production, it was Mr. Allen who had the burden of proving that the relevant documents were not removed from his OPF. *See Jones v. Office of Pers. Mgmt.*, 61 M.S.P.R. 252, 254 (M.S.P.B. 1994) (party

asserting breach bears the ultimate burden of proving facts establishing breach notwithstanding 5 C.F.R. § 1201.183(a)) (citing *Corbin on Contracts* (1986), §§ 709 (one who asserts a breach is ordinarily required to prove facts establishing such a breach) and 1230 (the plaintiff must prove the fact of breach). The Board properly weighed the evidence presented by both sides and concluded that Mr. Allen failed to prove that the agency maintained removal related documents in his OPF, rather than in some other file. Because substantial evidence supports the Board's conclusion, we find no error as to this issue.

## C.

Mr. Allen additionally argues that the Board erred in concluding that the agency's disclosure of removal-related information to the OWCP did not breach the settlement agreement. Of particular relevance to this issue is the following provision of the agreement:

> [The agency will] change [Mr. Allen's] removal to voluntary resignation, and make the following changes:
>
> a. SF 50-B Notification of Personnel Action. Removal, dated May 26, 2007, will be canceled and removed, and VA will substitute a form SF 50-B Notification of Personnel Action [indicating Mr. Allen's resignation].
>
> b. SF-50-B Notification of Personnel Action. Suspension, dated August 28, 2006, will be cancelled [sic] and removed.

A48 ¶ 10.

The Board found, and the agency does not dispute, that, under *Conant v. Office of Personnel Mgmt.*, 255 F.3d

1371 (Fed. Cir. 2001), it was required to read the above provision as "broadly prohibiting the agency from disclosing removal-related information to *any* third party." *Allen*, 2009 MSPB 238 ¶ 18 (emphasis in original); *see* Resp. Inf. Br. at 13-14 ("Generally, a settlement agreement with a clean record provision implicitly requires agency communications with third parties to reflect the amended OPF."). The Board also noted that, were its breach analysis based solely on that provision and "the agency's admitted disclosure of removal-related information to OWCP, then under *Conant*, the agency would have materially breached" the settlement agreement. *Id.* ¶ 16. Based on its reading of a separate provision of the settlement agreement, however, the Board distinguished *Conant* and concluded that the parties intended to permit the agency to disclose removal-related information whenever such disclosure is "required by law." *Id.* ¶¶ 16-19.[3]

> Paragraph 12, on which the Board relied, provides:

> [T]he Agency agrees that Human Resource Officer Jeanette Anderson, or her successor(s) . . . , if contacted for any employment inquiry or reference for the Appellant will provide the information contained in Exhibit "C," and will truthfully respond regarding those matters required by law.

A48 ¶ 12. Based on this language, the Board concluded that the parties intended to carve out an exception to any implied promise of non-disclosure where disclosure of removal-related documents is required by law. *Allen*, 2009 MSPB 238 ¶ 19. ("Based on *Felch* and the parties'

---

[3]    Because we agree with the Board's interpretation of the "required by law" provision of the agreement, we express no opinion on the Board's assumption that *Conant* would counsel in favor of finding a breach of the settlement agreement at issue here.

inclusion of express language that permits the agency to respond as required by law, we find that the parties intended to permit disclosure of removal-related information as required by law.").  We agree.[4]

The only reasonable reading of the paragraph is that it creates an exception to any implied promise of non-disclosure as to any matter for which the law requires truthful responses.  Consequently, the breach inquiry turns on whether the agency was required by law to disclose the removal-related information Ms. Anderson submitted to OWCP.

As the Board observed, several statutes and regulations impose disclosure obligations on agencies in connection with an OWCP inquiry.  Notably, 20 C.F.R. § 10.16, which specifically addresses statements made in connection with FECA claims, cites a number of statutes that make it a crime to "file a false statement" or "conceal a material fact" in connection with a FECA claim.  *See* 20 C.F.R. § 10.16 (citing 18 U.S.C. §§ 287, 1001, 1920, and 1922); 18 U.S.C. § 1001 ("[W]hoever, in any matter within the jurisdiction of [any] branch of the Government of the United States, knowingly and willfully . . . falsifies, conceals, or covers up . . . a material fact" or "makes any materially false . . . statement or representation . . . shall be fined [or] imprisoned."); 18 U.S.C. 1922 ("Whoever [is] charged with the responsibility for making the reports of the immediate superior [for FECA benefits, and] willfully fails, neglects, or refuses to make any of the reports, or

---

[4]    Even without such a provision in the agreement, it would appear to be contrary to public policy for a government agency to attempt to contract out of an obligation required by federal law.  *See Fomby-Denson v. Dep't of the Army*, 247 F.3d 1366, 1378 (Fed. Cir. 2001) (holding that a contract barring an agency from reporting criminal behavior would be against public policy).

knowingly files a false report . . . shall be fined . . . or imprisoned . . . .") Thus, in connection with its response to OWCP's inquiry, the agency was required by law to disclose material facts and to respond truthfully. The question which remains is whether Ms. Anderson needed to disclose removal-related information to respond truthfully or to avoid concealing a material fact.

As part of its examination of Mr. Allen's workers' compensation claim, OWCP specifically asked the agency to describe any performance or conduct issues:

> Was this employee generally able to perform required duties in accordance with expectations? Were there any performance or conduct problems? Please describe.

A57. In response, Ms. Anderson explained that, "[a]s a result of Mr. Allen's failure to comply with the provisions of [his] leave restriction, Mr. Allen was charged with over 100 hours of absences without leave (AWOL) for 15 separate incidents of AWOL, and 12 incidents of failure to follow Instructions, as well as failure to participate in an OIG investigation." A59. She further noted that, based on these issues, Mr. Allen's supervisor proposed his removal, and the agency decided to terminate Mr. Allen as of May 21, 2007. *Id.* She also submitted copies of Mr. Allen's Proposed Removal and Removal Decision.

Based on the nature of OWCP's request, we cannot say that the Board's finding that the agency was required by law to disclose removal-related information was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Information regarding Mr. Allen's removal was material to OWCP's inquiry because, among other things, it spoke to the gravity of Mr. Allen's conduct problems – i.e., it showed that Mr. Allen's issues were sufficiently serious to warrant termination. Conse-

quently, we find no error in the Board's conclusion that the agency did not breach the agreement when it disclosed removal-related information to OWCP.

### D.

Mr. Allen further argues that the Board erred in denying him an evidentiary hearing to determine whether the agency's response to OWCP was, in fact, truthful. He also claims that both the AJ and Board were biased towards him. Neither argument is well-taken.

There is no right to an evidentiary hearing in a petition for enforcement, and whether to hold a hearing is within the discretion of the Board. *See* 5 C.F.R. § 1201.183(a)(3). Mr. Allen, moreover, has not alleged that he suffered any prejudice when he was denied a hearing. Though he claims that the information and documents provided to OWCP "contained misleading, incomplete and untruthful statements," he fails to identify any such statements and has not introduced evidence that contradicts the information disclosed to OWCP. Consequently, we find no error in the Board's denial of an evidentiary hearing.

As to Mr. Allen's allegations of bias, he argues that the AJ demonstrated bias by "fail[ing] to address all material and relevant issues, cit[ing] irrelevant case law, and accept[ing] insufficient affidavit evidence [submitted] by the agency." Pet. Inf. Br. at 22. He also claims that the Board exhibited bias "by presenting arguments on behalf of the agency in its" 2009 Final Decision. *Id.* Mr. Allen's allegations of bias, however, are essentially assertions of legal error, and, in any event, do not give rise to an inference of bias sufficient to justify granting further relief in this case. *See Bieber v. Dep't of the Army*, 287 F.3d 1358, 1362 (Fed. Cir. 2002) (citation omitted) (A new hearing on the basis of bias requires a showing that the

administrative judge or the Board exhibited "a deep-seated favoritism or antagonism that would make fair judgment impossible. . . . [J]udicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless they derive from an extra-administrative source."). Accordingly, we find that Mr. Allen's bias claims are without merit.

## II.

With respect to the Board's 2010 Final Decision, Mr. Allen argues that the AJ failed to address his April 8, 2010 PFR challenging the validity of the settlement agreement. He also alleges error in the AJ's application of collateral estoppel to his claim that the agency breached the settlement agreement by maintaining removal-related documents in his OPF and in other files. Finally, Mr. Allen contends that the decision failed to adequately address his contention that the agency was dishonest about the location of his OPF.

## A.

We first address Mr. Allen's claim that the decision failed to address his April 8, 2010 PFR challenging the validity of the settlement agreement. There appears to be some confusion on behalf of the parties as to the Board's disposition of the April 8, 2010 PFR. Mr. Allen alleges that the Board "failed to address the merits of [this] petition and referred the petition to its Washington Regional Office ("RO") for review in Docket No. DC-0752-07-0694-C-4." Pet. Inf. Br. at 2. According to Mr. Allen, the RO subsequently issued a decision "in DC-0752-07-0694-C-4 without addressing" the referred PFR. *Id.* Mr. Allen additionally alleges that, on May 14, 2010, in connection with his April 8, 2010 PFR, the Board notified him in a letter that "he had no further right of appeal in

DC-0752-07-0694-C-3, as he had filed a review before the [Federal Circuit in] Docket No 2010-3088." *Id.*

Mr. Allen misinterprets the effect of the Board's May 14, 2010 letter. Though it did note that his appeal of the Board's 2009 Final Decision was pending before the Federal Circuit, it first explained that the Board would not reconsider its 2009 Final Decision and reopen Mr. Allen's removal appeal because its regulations do not provide for such requests:

> This is in response to your April [8][5] and 20, and May 6, 2010 requests for reconsideration of the Board's December 29, 2009 Opinion and Order in the appeal [of *Allen v. Dep't of Veterans Affairs*, MSPB Docket Nos. DC-0752-07-0694-C-3, DC-0752-07-0694-I-1].

> The Opinion and Order included a specific statement that it represents the final decision of the Board in this appeal and also notified you of your further review rights. The Board's regulations do not provide for your request for reconsideration of the Board's final decision. There is, therefore, no further right to review of this appeal by the Board.

Pet. Supp. to Rcd. Thus, properly understood, this letter served to inform Mr. Allen that he had no right to further review by the Board and that, accordingly, the Board

---

[5] In its original form, the letter references an April 9, 2010 request for consideration. Because the record contains no such request, it appears that the letter was intended to refer to Mr. Allen's April 8, 2010 PFR, in which he requests "that the Board reconsider" its December 29, 2009 "final decision."

would not consider his April 8, 2010 PFR or his April 20, 2010 supplement.[6]

With respect to Mr. Allen's claim that the Board "failed to address the merits of [his April 8, 2010 PFR] and referred the petition to its Washington Regional Office ("RO") for review in Docket No. DC-0752-07-0694-C-4," he is again mistaken. While it is true that the Board declined to address the merits of Mr. Allen's PFR, it did so not because it referred the PFR to the RO, but because Mr. Allen had no right to further review of the Board's final decision, as explained in the Board's May 14, 2010 letter.[7] While the Office of the Clerk of the Board did subsequently notify Mr. Allen that it forwarded a document titled "Appellant's Submission," to the Washington RO, nowhere does this notice indicate that the Board referred Mr. Allen's April 8, 2010 PFR "to its Washington Regional Office ("RO") for review in Docket No. DC-0752-07-0694-C-4," as Mr. Allen alleges. This notice, moreover, was dated May 26, 2010 – twelve days after the Board's letter "in response to [Mr. Allen's] April [8]" petition, in which it informed Mr. Allen that it would not reconsider its 2009 Final Decision. Thus, by May 26, 2010, there was no longer even a pending petition to be referred to the Washington RO because the Board had already decided not to entertain that petition. Because the record before us contains no indication that the April

---

[6]     The letter also impliedly conveyed that the Board would not exercise its discretion to reconsider the decision on its own accord. *Cf.* 5 C.F.R. § 1201.118 ("The Board may reopen an appeal and reconsider a decision of a judge on its own motion at any time, regardless of any other provisions of this part.").

[7]     To the extent, moreover, that Allen's April 8, 2010 PFR sought review of the Board's September 7, 2007 decision dismissing the appeal of his removal as settled, Allen's petition was untimely.

8, 2010 PFR should have been addressed in the Board's 2010 Final Decision – and shows, instead, that the Board declined to exercise its jurisdiction pursuant to 5 C.F.R. § 1201.118 to reconsider its 2009 Final Decision – Mr. Allen's claim that the 2010 Final Decision erred in failing to address his PFR is without merit.[8]

B.

Mr. Allen also contends that the AJ erred in applying collateral estoppel to his claim that the agency breached the settlement agreement by maintaining removal-related documents in his OPF, an "unofficial settlement file," and an "unauthorized secret personnel file." We disagree. As in his 2009 PFE, Mr. Allen's 2010 PFE argued that the agency breached the settlement agreement by maintaining removal-related documents in Mr. Allen's OPF and in other agency files. The only new fact alleged in Mr. Allen's 2010 PFE was that, in response to Mr. Allen's FOIA request, the agency revealed that the documents furnished to OWCP were maintained in an "unofficial settlement file." This fact, however, does not preclude the application of collateral estoppel because the 2009 Final Decision specifically found that: (1) based on our prece-

---

[8]    We, accordingly, do not reach the merits of Mr. Allen's arguments regarding the validity of the settlement agreement for the first time on appeal. Because those claims were raised only in his PFR, which was not properly before the RO and was, thus, never the subject of a final decision, Mr. Allen has failed to demonstrate that we have jurisdiction to entertain them. *See* 28 U.S.C. § 1295(a)(9) (providing jurisdiction only over "an appeal from a final order or final decision of the Merit Systems Protection Board"); *Johnson v. Dep't of Veterans Affairs*, No. 2010-3164, 2010 U.S. App. LEXIS 25161, *3 (Fed. Cir. December 8, 2010) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.")

dent in *Musick*, the agency was not required to expunge removal-related documents from *any* location other than Mr. Allen's OPF; and (2) his OPF was expunged of all removal-related documents. Consequently, the AJ properly applied the doctrine of collateral estoppel.

C.

Finally, Mr. Allen argues that the AJ failed to adequately address his claim that the agency has been "dishonest" about the location of his OPF since his separation. We disagree. The AJ considered this claim and properly concluded that it did not allege a breach of the settlement agreement.

CONCLUSION

For the foregoing reasons, the final decision of the Board is affirmed.

**AFFIRMED**

COSTS

Each party shall bear its own costs.