## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

PATRICK H. HANNIGAN,
    Appellant,

    v.

DEPARTMENT OF THE AIR FORCE,
    Agency.

DOCKET NUMBER
SF-0752-22-0089-C-3

DATE: September 13, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Andrew J. Perlmutter, Esquire, Silver Spring, Maryland, for the appellant.

Elbridge Wright Smith, Esquire, Honolulu, Hawaii, for the appellant.

Jeffrey Baldridge, Esquire, Justin Strong, Esquire, and Kathryn Price, Los Angeles Air Force Base, California, for the agency.

Emma Kinstedt, Esquire, El Segundo, California, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### ORDER

¶1  The agency has filed a petition for review of the compliance initial decision, which found the agency noncompliant with various terms of the parties' global

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

settlement agreement. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, for the reasons discussed below, we DENY the agency's petition for review and AFFIRM the compliance initial decision. Except as expressly MODIFIED by this Order to find that the agency has come into compliance with its obligation to provide the appellant with calculations of his back pay award and to find that the agency complied with its obligation to issue certain forms reflecting the appellant's voluntary retirement, we AFFIRM the compliance initial decision and refer the petition for enforcement to the Board's Office of General Counsel for additional processing and issuance of a final decision. *See* 5 C.F.R. § 1201.183(c).

## BACKGROUND

¶2     This compliance proceeding stems from the appellant's appeal of his March 27, 2020 removal. *Hannigan v. Department of the Air Force*, MSPB Docket No. SF-0752-22-0089-I-1, Initial Appeal File (IAF), Tab 1 at 9, 14-16. During the pendency of that appeal, the parties engaged in mediation and reached a settlement. IAF, Tabs 9, 15, 18. In exchange for the appellant's agreement to retire effective March 31, 2022, the agency agreed to, as relevant here, process

the appellant's back pay from the date of his removal through his March 31, 2022 retirement and expunge records related to his removal from its records. IAF, Tab 18 at 4-6. The administrative judge issued an initial decision accepting the settlement agreement into the record for enforcement purposes and dismissing the appeal as settled. IAF, Tab 19, Initial Decision.

¶3    On October 17, 2022, the appellant filed a petition for enforcement of the settlement agreement. *Hannigan v. Department of the Air Force*, MSPB Docket No. SF-0752-22-0089-C-1, Compliance File (C-1 CF), Tab 1. The petition for enforcement alleged that the agency was in violation of several key provisions of the agreement. *Id.* at 6-7. The administrative judge twice dismissed the appeal without prejudice to permit the agency additional time to comply with the agreement. C-1 CF, Tab 6, Compliance Initial Decision; *Hannigan v. Department of the Air Force*, MSPB Docket No. SF-0752-22-0089-C-2, Compliance File, Tab 5, Compliance Initial Decision.

¶4    On June 15, 2023, the regional office automatically refiled the compliance appeal. *Hannigan v. Department of the Air Force*, MSPB Docket No. SF-0752-22-0089-C-3, Compliance File (C-3 CF), Tab 1. The appellant filed a status update as to the settlement agreement's implementation in which he alleged that although he had received a back pay check and an accompanying leave and earnings statement from the Defense Finance and Accounting Service (DFAS), he had not received an accounting of how DFAS arrived at the amount on the check. C-3 CF, Tab 5 at 3. He further alleged that the agency had not provided documentation as to whether the agency had submitted the required paperwork to effectuate Old Age, Survivor, and Disability Insurance (OASDI) payments to the Social Security Administration (SSA) or to adjust his retirement annuity with the Office of Personnel Management (OPM). *Id.* Finally, the appellant alleged that the agency had not provided him with access to his updated Official Personnel File (OPF) so that he could confirm that the agency expunged the personnel

documents as agreed.  C-3 CF, Tab 4 at 3, Tab 5 at 3.  The appellant again requested enforcement of the agreement.  C-3 CF, Tab 4 at 3.

¶5        On November 14, 2023, the administrative judge issued a compliance initial decision that granted the appellant's petition for enforcement.  C-3 CF, Tab 6, Compliance Initial Decision (CID) at 2, 6.  The administrative judge found that the agency did not demonstrate compliance with all obligations regarding the payment of back pay or the issuance and expungement of personnel documents.  CID at 4, 6.  She ordered the agency to "provide detailed and clear documentation and data of the calculations it has made in determining the amount due the appellant" and to "provide the appellant with the updated personnel documents verifying the agency's completion of the personnel actions specified in the settlement agreement."  *Id.*

¶6        The agency has filed a timely petition for review.  Petition for Review (PFR) File, Tab 1.  On review, the agency argues that the settlement agreement contained no term that would require it to provide an accounting of DFAS's back pay award to the appellant.  *Id.* at 7.  In any event, it has provided evidence that after the compliance initial decision was issued, it supplied the appellant with DFAS's calculations related to back pay.  *Id.* at 61-91.  The agency also argues that it has issued all personnel documents required by the settlement agreement.  *Id.* at 9.  The appellant has responded to the agency's petition for review, and the agency has replied to the appellant's response.  PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7        The Board has broad authority to enforce the terms of a settlement agreement entered into the record.  *Engel v. U.S. Postal Service*, 114 M.S.P.R. 541, ¶ 6 (2010).  Because a settlement agreement is a contract, the Board will adjudicate an enforcement proceeding relevant to a settlement agreement in accordance with contract law.  *Id.*  Under settled contract law, the party alleging breach of a settlement agreement has the burden of proving such breach.  *Id.*

However, under case law and the Board's regulations, the agency also has a heavy burden of production regarding compliance. *Id.*; 5 C.F.R. § 1201.183(a)(1)(i)-(iii).

<u>We modify the compliance initial decision to find that the agency has come into compliance with its obligation to provide a calculation of the appellant's back pay award.</u>

¶8    In her compliance initial decision, the administrative judge held that although the appellant eventually received a back pay award from DFAS, the agency did not provide any calculations demonstrating the correctness of the payment. CID at 5. On review, the agency argues that nothing in the four corners of the settlement agreement required it to demonstrate how the appellant's back pay award was calculated. PFR File, Tab 1 at 7. The agency misunderstands its obligation.

¶9    Paragraph 2b of the parties' settlement agreement required the agency to "[m]ake a request of DFAS . . . to pay the appellant [back pay]." IAF, Tab 18 at 4. Irrespective of whether the four corners of the settlement agreement require it, the Board's regulations and case law are clear that to demonstrate compliance with a back pay award, the agency is required to provide an explanation of how the appellant's back pay award was calculated. *Antunes v. U.S. Postal Service*, 61 M.S.P.R. 408, 410 (1994) (holding that because an agency had not adequately explained how it calculated the interest on a back pay award, it had not complied with the Board's regulations); *Blanchard v. Department of Justice*, 40 M.S.P.R. 513, 514-15 (1989) (stating that a submission of satisfactory evidence of compliance by the agency must include an explanation of how it calculated the net back pay paid to the appellant); 5 C.F.R. § 1201.183(a)(1)(i) (stating that when one party files a petition for enforcement, the alleged noncomplying party must file evidence of compliance, including a narrative explanation of the calculation of back pay and other benefits, and supporting documents).

¶10　　To the extent the agency argues that it is absolved of responsibility for back pay providing calculations because DFAS processed the back pay, we disagree. PFR File, Tab 1 at 5-7.　The agency is a military department within the Department of Defense (DOD).　5 U.S.C. § 102.　DOD, in turn, created and directs DFAS.　Defense Finance and Accounting Service, 55 Fed. Reg. 50179 (Dec. 5, 1990).　The Board has previously found a military department in noncompliance when it provided only informal back pay calculations and stated that those calculations were not "back pay audits by DFAS and anything they submit" would take precedence.　*Washington v. Department of the Navy*, 115 M.S.P.R. 599, ¶ 10 (2011).

¶11　　At the time of the compliance initial decision, neither the agency nor DFAS had provided the appellant with a calculation of his back pay award.　Therefore, the administrative judge correctly found the agency noncompliant with its back pay obligations.　However, on December 14, 2023, following the issuance of the compliance initial decision, the agency provided the appellant with various tables and spreadsheets from DFAS, which explained how DFAS arrived at the appellant's back pay award.　PFR File, Tab 1 at 61-91.　The appellant has acknowledged that he received these explanatory documents and does not challenge their accuracy.　PFR File, Tab 3 at 4.

¶12　　In response to the agency's petition for review, the appellant alleges that the agency has not demonstrated that it sent his OASDI payments to SSA or annuity deductions to OPM, or that it coordinated with SSA or OPM regarding these benefits.　*Id.* at 5-6.　In support, the appellant submits a January 1, 2024 screen capture of his online social security earnings record, which reflects that there were no taxed social security earnings during 2021 and 2022.　*Id.* at 8-10.　As relevant to this argument, the back pay provision of the settlement agreement acknowledged that processing the appellant's back pay required adjustments for a variety of benefits, including OASDI and the appellant's retirement annuity.　IAF, Tab 18 at 4.　It further stated that "the Agency will make full payment directly to

OPM for . . . [r]etirement deductions." *Id.* at 4-5. The administrative judge concluded that the agency met its obligation to coordinate with OPM because the appellant's annuity had been adjusted. CID at 4; C-3 CF, Tab 5.

¶13 The DFAS calculation of the appellant's back pay award shows a $27,532.56 deduction for "OPM-Annuity" and a $9,932.40 deduction for OASDI. PFR File, Tab 1 at 68. The agency demonstrated that it took all the necessary steps to comply with the back pay provision in the settlement agreement. Under similar circumstances, when an appellant alleged that an agency improperly terminated his healthcare benefits, and the agency provided evidence that it took all steps necessary to continue the appellant's healthcare coverage, the Board held that the appellant's complaints were properly addressed to the healthcare organization, not the agency. *Kolassa v. Department of the Treasury*, 59 M.S.P.R. 151, 155-56 (1993). It is unclear what additional documentation or evidence of compliance the appellant is seeking from the agency. If, upon contacting OPM and SSA, the appellant discovers that his annuity was miscalculated or his OASDI payments were not adjusted because of some improper act or failure to act by the agency, the appellant may file a petition for enforcement with the regional office stating with specificity the nature of the agency's noncompliance. *See id.* at 156.

¶14 Accordingly, we modify the compliance initial decision to find that the agency is now in compliance with the back pay provision of the parties' settlement agreement.

We modify the initial decision to find that the agency has complied with its obligation to process forms related to the appellant's retirement but agree with the administrative judge that the agency has not provided forms related to the appellant's reinstatement.

¶15 Paragraphs 2a and 2e of the parties' settlement agreement require the agency to issue a Standard Form 52 (SF-52) reinstating the appellant effective March 27, 2020, and then issue another SF-52 effecting his March 31, 2022 retirement. IAF, Tab 18 at 4-5. The agreement further indicated that the Air

Force Personnel Center would issue the Standard Forms 50 (SF-50s) associated with these actions. *Id.* The administrative judge found that the agency did not provide evidence of compliance with these terms. CID at 5-6. The agency disputes this finding on review, pointing to its "efforts" and its communications to the appellant about those efforts. PFR File, Tab 1 at 8-9 (citing C-1 CF, Tab 4 at 22-27, 52-67). We find that the agency has provided some evidence of compliance and modify the initial decision accordingly.

¶16        The agency submitted below an SF-52 and an SF-50 processing the appellant's voluntary retirement effective March 31, 2022, along with emails from the agency personnel involved in preparing them.[2] C-1 CF, Tab 4 at 62-67. When, as here an agency has produced evidence of compliance, an appellant must rebut that evidence with specific and nonconclusory assertions of noncompliance. *Alford v. Department of Defense*, 113 M.S.P.R. 629, ¶¶ 6, 10 (2010) (concerning an agency's alleged noncompliance with a final Board order).

¶17        Following the agency's submission of the SF-52 and SF-50 memorializing the appellant's voluntary retirement, he argued that "the Agency has yet to provide [him] with the updated personnel documents showing the Agency's completion of the personnel actions specified in the Parties' settlement." C-3 CF, Tab 5 at 3. However, he did not address the agency's evidence, specify which documents were missing, or provide any documentation reflecting that he communicated to the agency that its documentation of his retirement was insufficient. *Id.* In response to the agency's petition for review, the appellant more narrowly asserts that the agency has not "process[ed] particular personnel forms, including a reinstatement SF-50." PFR File, Tab 3 at 4.

¶18        Based on our review of the records, we agree with the administrative judge that the agency has not provided the SF-52 or SF-50 reinstating the appellant and

---

[2] Although not expressly required by the agreement, the agency also provided SF-50s reflecting that it canceled the appellant's removal effective March 22, 2020, and processed a within grade increase for the appellant effective February 13, 2022. C-1 CF, Tab 4 at 22-26.

is not in compliance with that requirement of the agreement. As to the SF-50 and SF-52 processing the appellant's retirement, we modify the initial decision to find that the agency provided sufficient evidence of compliance.

<u>The agency is not in compliance with the requirement that it expunge documentation from the appellant's records.</u>

¶19 Paragraph 2a of the agreement also states that "the agency will promptly expunge from its records the . . . SF-50 documenting the Appellant's removal dated March 27, 2020, and also expunge from its records the above reinstatement SF-50." IAF, Tab 18 at 4. The appellant acknowledged in the agreement that "sometime after his retirement, his records will be transferred to the National Personnel Records Center (NPRC)" and that he would "likely need to communicate directly with OPM to effect the expungement." *Id.* The agency agreed to "assist as needed with that process." *Id.*

¶20 In her compliance initial decision, the administrative judge found that the agency had not shown that it expunged the identified SF-50s. CID at 5-6. The agency argues that it does not maintain an electronic official personnel folder (eOPF) after an employee retires. PFR File, Tab 4 at 7-8. The agency provides a printout from the National Archives' website stating that "OPFs are retired to the [NPRC] within 120 days after separation from Federal employment" and explaining who may obtain copies of an OPF and how to make a request. *Id.* at 10-13. The agency extrapolates that because it is not "wholly possessed of these records," the appellant's remedy is to seek his eOPF from either the National Archives or OPM. *Id.* at 8.

¶21 When an appellant alleges noncompliance with a settlement agreement, the agency must produce relevant material evidence of its compliance with the agreement or show that there was good cause for noncompliance. *Allen v. Department of Veterans Affairs*, 112 M.S.P.R. 659, ¶ 7 (2009), *aff'd per curiam*, 420 F. App'x 980 (Fed. Cir. 2011). Here, the agency has not done so. It does not state or provide evidence that it transferred the appellant's eOPF to the NPRC

within the 120-day transfer deadline; rather, it notes that the appellant recognized in the agreement that it would do so at some point. PFR File, Tab 1 at 7-8. And the agency's obligation to expunge documents extended to all of "its records," not just the appellant's OPF or eOPF. IAF, Tab 18 at 4. The agency has not claimed or provided evidence that it reviewed other records that it maintains to ensure that the documents have been expunged.

¶22    Further, to the extent that the agency argues that it is not responsible to provide evidence of compliance because it is not wholly possessed of the appellant's eOPF, it is mistaken. When the allegedly noncomplying party is "wholly possessed of the evidence" of compliance, it "has the duty of producing all of the evidence that it has" to show compliance. *Perry v. Department of the Army*, 992 F.2d 1575, 1578 (Fed. Cir. 1993). However, the opposite is not also true. The agency's duty to produce evidence of compliance is triggered by the filing of a petition for enforcement. *Jones v. Office of Personnel Management*, 61 M.S.P.R. 252, 254 (1994); *see* 5 C.F.R. § 1201.183(a)(1) (reflecting that once a party files a petition for enforcement, the alleged noncomplying party must file evidence of compliance or a statement showing good cause for the failure to comply completely). An appellant is not required to request evidence of compliance before the agency's obligation to produce such evidence arises. *Jones*, 61 M.S.P.R. at 254.

¶23    More specifically, as relevant here, an agency does not comply with an agreement to expunge records related to an appellant's removal in exchange for his voluntary separation by correcting only those files that the agency has on hand while other agencies such as OPM and DFAS maintain records of the expunged action. *King v. Department of the Navy*, 130 F.3d 1031, 1033-34 (Fed. Cir. 1997). Although it is not necessary for our finding of noncompliance, we observe that the agency agreed to do more than merely expunge the appellant's records. It also agreed, under paragraph 2b of the settlement agreement, that it would not communicate information regarding the appellant's removal and reinstatement to

third parties. IAF, Tab 18 at 5. We agree with the administrative judge that the agency is in noncompliance with the requirement to expunge the appellant's removal and reinstatement SF-50s from its records.

¶24    Because we have found the agency in partial noncompliance, the agency is being directed to file evidence of compliance with the Clerk of the Board, and the appellant will be afforded the opportunity to respond to that evidence. The appellant's petition for enforcement will be referred to the Board's Office of General Counsel, and, depending on the nature of the submissions, an attorney with the Office of General Counsel may contact the parties to further discuss the compliance process. The parties are required to cooperate with that individual in good faith. Because the purpose of the proceeding is to obtain compliance, when appropriate, an Office of General Counsel attorney or paralegal may engage in ex parte communications to, among other things, better understand the evidence of compliance and any objections to that evidence. Thereafter, the Board will issue a final decision fully addressing the agency's petition for review of the compliance initial decision[3] and setting forth the parties' further appeal rights and the right to attorney fees, if applicable.

## ORDER

¶25    We ORDER the agency to submit to the Clerk of the Board within 60 days of the date of this Order satisfactory evidence of compliance. This evidence shall adhere to the requirements set forth in 5 C.F.R. § 1201.183(a)(6)(i), including submission of evidence and a narrative statement of compliance. The agency's submission shall demonstrate that it processed the SF-52 or SF-50 reinstating the appellant and expunged all personnel documents identified in paragraph 2a of the parties' settlement agreement. The agency must serve all parties with copies of its submission.

---

[3] The subsequent decision may incorporate the analysis and findings set forth in this Order.

¶26      The agency's submission should be filed under the new docket number assigned to the compliance referral matter, **MSPB Docket No. SF-0752-22-0089-X-1**. All subsequent filings should refer to the compliance referral docket number set forth above and should be faxed to (202) 653-7130 or mailed to the following address:

Clerk of the Board
U.S. Merit Systems Protection Board
1615 M Street, N.W.
Washington, D.C. 20419

Submissions may also be made by electronic filing at the MSPB's e-Appeal site (https://e-appeal/mspb.gov) in accordance with the Board's regulation at 5 C.F.R. § 1201.14.

¶27      The appellant may respond to the agency's evidence of compliance within 20 days of the date of service of the agency's submission. 5 C.F.R. § 1201.183(a)(8). If the appellant does not respond to the agency's evidence of compliance, the Board may assume that he is satisfied with the agency's actions and dismiss the petition for enforcement.

¶28      The agency is reminded that, if it fails to provide adequate evidence of compliance, the responsible agency official and the agency's representative may be required to appear before the General Counsel of the Merit Systems Protection Board to show cause why the Board should not impose sanctions for the agency's noncompliance in this case. 5 C.F.R. § 1201.183(a). The Board's authority to impose sanctions includes the authority to order that the responsible agency official "shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with." 5 U.S.C. § 1204(e)(2)(A).

¶29      This Order does not constitute a final order and therefore is not subject to judicial review under 5 U.S.C. § 7703(a)(1). Upon the Board's final resolution of

the remaining issues in this petition for enforcement, a final order shall be issued, which shall be subject to judicial review.

FOR THE BOARD:

*Gina K. Grippando*
_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.